# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GLORIANNA WOODARD,

        Defendant-Appellant.

FOR PUBLICATION
September 19, 2017
9:10 a.m.

No. 336512
Jackson Circuit Court
LC No. 15-004629-FH

Before: HOEKSTRA, P.J., and METER and K. F. KELLY, JJ.

HOEKSTRA, P.J.

In this interlocutory appeal, defendant has been charged with operating a motor vehicle while intoxicated, third offense, MCL 257.625, and operating a vehicle while license is suspended or revoked, MCL 257.904. In the trial court, defendant filed a motion to suppress evidence of her blood alcohol content, asserting that the analysis of her blood constituted an illegal search performed after she withdrew her consent for a blood test. The trial court denied this motion and denied defendant's motion for reconsideration. Defendant filed an interlocutory application for leave to appeal, which this Court granted.[1] Because the trial court did not err by denying defendant's motion to suppress, we affirm and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

On March 6, 2015, Michigan State Police Trooper Anthony Ramirez conducted a traffic stop of a vehicle driven by defendant. Initially, Ramirez stopped the vehicle because the license plate light was non-operational and the license plate had a "smoke tinted" cover. However, based on defendant's watery and blood shot eyes, the smell of alcohol in the vehicle, as well as defendant's unsteady gate and performance on field sobriety tests, Ramirez believed defendant was intoxicated. At Ramirez's request, defendant agreed to perform a preliminary breath test. Ramirez then arrested defendant for operating a motor vehicle while intoxicated, and Ramirez asked defendant to consent to a blood test. Defendant consented to a blood test, and Ramirez

---

[1] *People v Woodard*, unpublished order of the Court of Appeals, entered April 4, 2017 (Docket No. 336512).

transported defendant to a hospital where blood was drawn. The blood sample was then sent to the Michigan State Police Laboratory for analysis.

On March 9, 2015, before testing on defendant's blood sample had been conducted, defendant's attorney sent Trooper Ramirez, the Jackson County Prosecutor, and the Michigan State Police Forensic Science Division a document entitled "Notice of Defendant's Withdrawal of Consent to Search, Demand to Cease and Desist Further Warrantless Search, and Demand for Return of Blood Samples." In relevant part, this documented stated:

> NOW COMES the Defendant, GLORIANNA WOODARD, by and through counsel, the Maze Legal Group, PC, by William J. Maze, and hereby provides notice that she withdraws her consent for further voluntary search of her blood sample based upon the following:
>
> 1. Defendant, GLORIANNA WOODARD, is alleged to have voluntarily permitted a withdrawal of his [sic] blood on or about March 6, 2015.
>
> ***
>
> 6. Defendant now affirmatively withdraws her consent for further search, demanding that the police, prosecutor and state laboratory immediately cease and desist from further search of the blood evidence, demanding that these state actors immediately obtain a search warrant to justify any search and/or continued detention of the blood sample, returning the blood sample to Defendant forthwith if a warrant is not sought and obtained immediately by the government.
>
> ***
>
> 9. If the Prosecuting attorney, Michigan State Police Forensic Science Division, or the Michigan State Police Jackson Post, desires to keep the blood sample and/or conduct any testing that has not already occurred on the blood sample, [defendant] demands that any search be conducted pursuant to a search warrant. . . .

The parties who received this notice did not heed its demand to cease further testing and return the blood sample. The subsequent analysis of defendant's blood sample revealed that she had a blood alcohol content of 0.212 at the time of the blood draw. The prosecutor charged defendant with operating a motor vehicle while intoxicated, third offense, and operating a vehicle while license is suspended or revoked.

In the circuit court, defendant filed a motion to suppress the results of her blood alcohol test, asserting that, although she consented to the blood draw, she revoked her consent before the tests were conducted and, in the absence of a warrant, the analysis of her blood constituted an unlawful search. In response, the prosecutor maintained that defendant did not have a privacy interest that would prevent the analysis of a lawfully obtained blood sample. Citing *People v Perlos*, 436 Mich 305; 462 NW2d 310 (1990), the trial court agreed with the prosecutor, concluding that testing of a lawfully obtained sample did not violate the Fourth Amendment. In denying defendant's motion for reconsideration, the trial court similarly reasoned that "once

-2-

consent is given, blood is drawn, then they can go forward with the testing at that point . . . ." Following denial of her motion for reconsideration, defendant filed an interlocutory application for leave to appeal, which we granted.

On appeal, defendant argues that the trial court erred by denying her motion to suppress the results of her blood test. In making this argument, defendant does not dispute that she voluntary consented to Ramirez's request for a blood test and she does not challenge the lawfulness of the blood draw at the hospital. Instead, defendant maintains that the subsequent analysis of her blood constituted a separate and distinct search. Because consent may be withdrawn at any time, defendant argues that, until her blood was analyzed, she could withdraw her consent to the blood test and demand the return of her blood sample. In view of her notice to authorities withdrawing her consent, defendant contends that any tests on her blood without a warrant were per se unreasonable and that the results of the testing must be suppressed.

## II. STANDARDS OF REVIEW

A trial court's factual findings made when ruling on a motion to suppress are reviewed for clear error. *People v Tavernier*, 295 Mich App 582, 584; 815 NW2d 154 (2012). "But the application of constitutional standards regarding searches and seizures to essentially uncontested facts is entitled to less deference[.]" *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). We review de novo whether the Fourth Amendment was violated and whether the exclusionary rule applies. *People v Mungo*, 295 Mich App 537, 545; 813 NW2d 796 (2012). We also review de novo the trial court's ultimate decision on a motion to suppress. *Williams*, 472 Mich at 313.

## III. ANALYSIS

"The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000), citing US Const, Am IV; Const 1963, art 1, § 11. "[A] search for purposes of the Fourth Amendment occurs when the government intrudes on an individual's reasonable, or justifiable, expectation of privacy." *People v Antwine*, 293 Mich App 192, 195; 809 NW2d 439 (2011) (citation and quotation marks omitted). In comparison, "[a] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v Jacobsen*, 466 US 109, 113; 104 S Ct 1652; 80 L Ed 2d 85 (1984). The touchstone of these protections is reasonableness, which "is measured by examining the totality of the circumstances." *Williams*, 472 Mich at 314. "Ordinarily, searches or seizures conducted without a warrant are unreasonable per se;" and "when evidence has been seized in violation of the constitutional prohibition against unreasonable searches and seizures, it must be excluded from trial." *People v Dagwan*, 269 Mich App 338, 342; 711 NW2d 386 (2005).

However, there are exceptions to the warrant requirement, including a search conducted pursuant to consent. *People v Borchard-Ruhland*, 460 Mich 278, 294; 597 NW2d 1 (1999). "Fourth Amendment rights are waivable and a defendant may always consent to a search of himself or his premises." *People v Frohriep*, 247 Mich App 692, 702; 637 NW2d 562 (2001) (citation omitted). When conducting a consent search, the police are limited by the terms of the

defendant's consent. *People v Powell*, 199 Mich App 492, 496; 502 NW2d 353 (1993). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect." *Frohriep*, 247 Mich App at 703 (citation and quotation marks omitted). Additionally, just as a suspect may limit the scope of the search at the outset, a suspect may also withdraw consent at any time. *Dagwan*, 269 Mich App at 343; *Powell*, 199 Mich App at 498, 500. However, revocation of consent does not operate retroactively to invalidate the search conducted before withdrawal of consent. *Powell*, 199 Mich App at 497, 499. More fully, this Court has explained the revocation of consent as follows:

> [A] suspect may revoke his consent to search at any time. The revocation of the consent to search, however, does not invalidate the search conducted pursuant to the valid consent of the suspect before that consent was revoked. Any evidence obtained during the consensual portion of that search is admissible. However, once the consent is revoked, the police must stop the search unless continuing the search may be justified under some basis other than the suspect's consent. Finally, any evidence obtained during the consensual portion of the search may be considered in determining whether a continued search may be justified on some other basis. [*Id.* at 500-501.]

In this case, the state conduct at issue involves the collection of a blood sample from defendant's person and the analysis of that blood to determine defendant's blood alcohol content. In defendant's view, this conduct may be sub-divided into two distinct searches, such that the analysis of defendant's blood is a "search" and she may withdraw her consent at any time before this analysis is conducted. In comparison, the prosecution maintains that, once the blood sample was lawfully removed from defendant's body and collected by the police for alcohol analysis, the "search" is complete, meaning that defendant was not entitled to the return of this lawfully seized evidence and she no longer had a reasonable expectation of privacy in the alcohol content of that sample. In short, we must decide whether the analysis of a blood sample, obtained with consent for the purposes of alcohol testing, constitutes a "search" within the meaning of the Fourth Amendment.

## A. THE SEARCH AND SEIZURE

We begin our analysis with the unremarkable proposition that drawing defendant's blood for analysis constituted a search within the meaning of the Fourth Amendment. *Birchfield v North Dakota*, ___ US ___, ___; 136 S Ct 2160, 2173; 195 L Ed 2d 560 (2016); *Borchard-Ruhland*, 460 Mich at 293. Specifically, drawing blood for investigative purposes necessitates a physical intrusion, penetrating beneath the skin into ones veins, thereby infringing on a deep-rooted expectation of privacy that society is prepared to recognize as reasonable. *Missouri v McNeely*, 569 US 141, ___; 133 S Ct 1552; 185 L Ed 2d 696 (2013); *Skinner v R Labor Executives' Ass'n*, 489 US 602, 616; 109 S Ct 1402; 103 L Ed 2d 639 (1989). However, we note that this search, i.e., this physical intrusion beneath the skin, is completed upon the drawing of

blood. *Johnson v Quander*, 440 F3d 489, 500; 370 US App DC 167 (2006).[2]  Having consented to the blood draw and having made no effort to withdraw her consent until after the search was complete, defendant has no grounds on which to object to this search.

Recognizing that the blood draw was a search, it follows that the evidence seized during the course of the consent search was defendant's blood.  See *State v Perryman*, 275 Or App 631, 637; 365 P3d 628 (2015) ("A blood draw conducted by the police is simultaneously a search of a person and a seizure of [evidence]—that person's blood.").  This seizure of blood is also within the scope of defendant's consent because, when giving consent to a blood draw for alcohol testing, the typical reasonable person would obviously understand that the evidence the authorities intended to seize was a sample of blood for alcohol analysis.  See *United States v Dichiarinte*, 445 F2d 126, 129 (CA 7 1971); *Frohriep*, 247 Mich App at 703.  Moreover, because the blood itself was collected before defendant attempted to withdraw her consent, her withdrawal of consent came too late to invalidate the seizure of her blood.  In other words, defendant cannot retroactively withdraw her consent to the blood draw, and her attempt to withdraw consent after the search cannot deprive the police of evidence lawfully collected during the course of the consent search.  See *Powell*, 199 Mich App at 499, 501.  Having consented to the search and voluntarily surrendered her possessory interest in the blood sample, there is thus no basis on which defendant can object to the seizure of her blood on March 6, 2015.

## B.  THE ANALYSIS OF LAWFULLY OBTAINED EVIDENCE

Given that the evidence seized during the valid consent search was defendant's blood, the question becomes whether the subsequent analysis of this lawfully obtained evidence constitutes a "search" such that, before the analysis was conducted, defendant could withdraw her consent, prevent the blood alcohol testing, and demand the return of her blood sample.  We recognize that "obtaining and examining" evidence may be considered a search, provided that doing so "infringes an expectation of privacy that society is prepared to recognize as reasonable." *Skinner*, 489 US at 616 (citations omitted); *Jacobsen*, 466 US at 123.  However, considering the totality of the circumstances,[3] we conclude that society is not prepared to recognize a reasonable expectation of privacy in the alcohol content of a blood sample voluntarily given by a defendant to the police for the purposes of blood alcohol analysis.  As such, the testing of this lawfully obtained evidence does not constitute a distinct search for Fourth Amendment purposes and any effort to withdraw consent after this evidence has been lawfully obtained cannot succeed.

We are not aware of any binding authority to specifically consider whether consent to blood alcohol testing may be withdrawn prior to the analysis of a voluntarily provided blood sample.  However, there is persuasive authority holding that, once a blood sample has been

---

[2] While the decisions of lower federal courts and other state courts are not binding on this Court, they may be considered as persuasive authority. *People v Jackson*, 292 Mich App 583, 595 n 3; 808 NW2d 541 (2011).

[3] Whether an expectation is one that society recognizes as reasonable depends on the totality of the circumstances. *Antwine*, 293 Mich App at 195.

lawfully obtained for purposes of analysis, the subsequent testing of that sample has "no independent significance for fourth amendment purposes." *Dodd v Jones*, 623 F3d 563, 569 (CA 8 2010); *United States v Snyder*, 852 F2d 471, 474 (CA 9 1988). While these cases have often been decided in the context of blood seized via a warrant, they stand for the proposition that the testing of blood evidence "is an essential part of the seizure," *State v VanLaarhoven*, 248 Wis 2d 881, 891; 637 NW2d 411 (2001), and that "the right to seize the blood . . . encompass[es] the right to conduct a blood-alcohol test at some later time," *Snyder*, 852 F2d at 474. Thus, these cases reason that the extraction and testing of blood are "a single event for fourth amendment purposes," regardless of how promptly the subsequent test is conducted. *Id.* at 473-474.

In reaching this conclusion, the Court in *Snyder* relied heavily on *Schmerber v California*, 384 US 757, 768; 86 S Ct 1826; 16 L Ed 2d 908 (1966), a United States Supreme Court decision involving the Fourth Amendment implications of a compelled blood alcohol test. According to *Snyder*, although *Schmerber* did not expressly address whether testing of blood is a separate search, the Court in "*Schmerber* viewed the seizure and separate search of the blood as a single event for fourth amendment purposes." *Snyder*, 852 F2d at 474. See also *Vernonia Sch Dist 47J v Acton*, 515 US 646, 652; 115 S Ct 2386; 132 L Ed 2d 564 (1995) (characterizing "state-compelled collection and testing" of biological fluids as a singular "'search' subject to the demands of the Fourth Amendment"). In contrast, defendant quotes *Skinner*, 489 US at 616, 618, arguing that collection and testing must be considered separate searches because the *Skinner* Court referred to the testing of biological samples as a "further invasion" of privacy and referred to "searches" in the plural form when stating that "collection and subsequent analysis of the requisite biological samples must be deemed Fourth Amendment searches." However, the issue in *Skinner* was a Fourth Amendment challenge to drug-testing of railroad employees, during which the Court weighed privacy interests against government interests for purposes of determining whether a "special need" justified compulsory collection and testing of biological fluids without a warrant. *Id.* at 620. The Court was simply not considering whether the testing of a biological sample that had already been lawfully seized by law enforcement officials constituted a second and distinct "search" with Fourth Amendment implications independent of the collection of the sample. See *State v Swartz*, 517 SW3d 40, 49 (Mo Ct App 2017); *State v Fawcett*, 877 NW2d 555, 560 (Minn Ct App 2016); *State v Riedel*, 259 Wis 2d 921, 930 n 6; 656 NW2d 789 (2002). In short, we do not read *Skinner* as deciding the issue now before us, and defendant's reliance on *Skinner* is misplaced. Instead, we find persuasive *Snyder*'s recognition that collection and testing of blood are "a single event for fourth amendment purposes." *Snyder*, 852 F2d at 473-474.

In rejecting efforts to parse the collection and analysis of blood evidence into separate searches, courts have frequently concluded that there is no objectively reasonable expectation of privacy in a sample lawfully obtained for the purposes of analysis, such that testing of the sample does not involve a search or seizure with Fourth Amendment implications. See *State v Hauge*, 103 Hawai'i 38, 51; 79 P3d 131 (2003) and cases therein ("Our review of the case law of other jurisdictions indicates that the appellate courts of several states have ruled that expectations of

privacy in lawfully obtained blood samples . . . are not objectively reasonable by 'society's' standards.").[4] More fully, these cases reason as follows:

> It is also clear that once a person's blood sample has been obtained lawfully, he can no longer assert either privacy claims or unreasonable search and seizure arguments with respect to the use of that sample. Privacy concerns are no longer relevant once the sample has already lawfully been removed from the body, and the scientific analysis of a sample does not involve any further search and seizure of a defendant's person. In this regard we note that the defendant could not plausibly assert any expectation of privacy with respect to the scientific analysis of a lawfully seized item of tangible property, such as a gun or a controlled substance. Although human blood, with its unique genetic properties, may initially be quantitatively different from such evidence, once constitutional concerns have been satisfied, a blood sample is not unlike other tangible property which can be subject to a battery of scientific tests. . . . [*Barkley*, 144 NC App at 519 (citation omitted).]

From these various persuasive authorities, we draw the basic understanding that blood which has been lawfully collected for analysis may be analyzed without infringing on additional privacy interests or raising separate Fourth Amendment concerns.[5]

---

[4] See also *State v Loveland*, 696 NW2d 164, 166 (SD 2005) ("After the urine sample was seized by the police, testing the sample for the presence of illegal substances required no further seizure of [the defendant's] person or effects."); *State v Notti*, 316 Mont 345, 350; 71 P3d 1233 (2003) ("[A] defendant's privacy interest in blood samples or blood profiles is lost when the defendant consents to a blood draw or where it has been obtained through proper judicial proceedings."); *State v Barkley*, 144 NC App 514, 519; 551 SE2d 131 (2001) ("Privacy concerns are no longer relevant once the sample has already lawfully been removed from the body."); *Wilson v State*, 132 Md App 510, 550; 752 A2d 1250, 1272 (2000) ("Any legitimate expectation of privacy that the appellant had in his blood disappeared when that blood was validly seized in 1991."); *People v King*, 232 AD2d 111, 117; 663 NYS2d 610 (1997) ("It is also clear that once a person's blood sample has been obtained lawfully, he can no longer assert either privacy claims or unreasonable search and seizure arguments with respect to the use of that sample."). None of these cases are directly on point because they did not involve an attempt by a defendant to withdraw consent before initial analysis of the blood occurred, but instead typically involved efforts to prevent the police from re-analyzing the evidence or using it for additional purposes or in a subsequent, unrelated case. Nevertheless, we find these cases persuasive in their discussion of the reasonable privacy interests that remain when a defendant has surrendered a biological sample to law enforcement authorities.

[5] Relying on *Riley v California*, __ US__, __; 134 S Ct 2473; 189 L Ed 2d 430 (2014), defendant disputes the basic assertion that lawfully obtained evidence may be examined by police and he argues that such a rule applied to blood would exalt the privacy interests in cellular telephones over an individual's privacy interests in her own blood. However, *Riley* is readily

More specifically, the notion that there is no privacy interest that would prevent blood alcohol analysis on a sample of blood lawfully collected for that purpose is bolstered by Michigan's implied consent statutes and the Michigan Supreme Court's decision in *Perlos*, 436 Mich at 305. In part, *Perlos* involved consideration of whether there was a reasonable expectation of privacy in alcohol blood test results when the testing was conducted for purposes of medical treatment following an accident and the results were then provided to law enforcement authorities pursuant to MCL 257.625a(9).[6] *Perlos* is not directly on point because it involved evidence that police obtained from a third-party, i.e., blood test results obtained from the hospital as opposed to the analysis of a blood sample by a state actor. However, what we find instructive is *Perlos*'s consideration of the implied consent statutes as a source for analyzing the reasonableness of a privacy expectation for purposes of the Fourth Amendment. See *Perlos*, 436 Mich at 326-331. For example, in concluding that there was no reasonable expectation of privacy in hospital blood alcohol test results, the Court noted, among other considerations, that "when people drive, they encounter a diminished expectation of privacy" particularly in view of the strong public interest in curtailing drunk driving, as evinced in the implied consent statutes, and that, furthermore, the procedures of the implied consent act are narrowly tailored insofar as they do not allow discretionary testing of blood for any reason by the police and thus do not pose a risk of unrestricted access to medical information. *Id.* at 327-330. Ultimately, given the "minimal intrusion" and motorists' diminished expectation of privacy, the Court determined that there is no reasonable expectation of privacy in a blood alcohol test result. *Id.* at 326, 330.

By extension, this reasoning applies to situations in which, in the context of drunk-driving, police procure a blood sample for alcohol testing pursuant to a defendant's consent. The individual has consented to the taking of blood, meaning that the sample has been lawfully obtained; and, once the sample is collected pursuant to consent, the analysis of the blood is for the limited purpose of determining blood alcohol.[7] Cf. *id.* In view of the implied consent statute and the reasoning in *Perlos*, it is apparent that society is not prepared to recognize as reasonable a privacy interest in the blood alcohol content of a sample voluntarily supplied to the police for

distinguishable because it involved the seizure of evidence incident to arrest. Recognizing that searches incident to arrest are conducted for officer safety and the preservation of evidence, the Court determined that a cell phone may be seized to prevent destruction of evidence and the physical phone may examined to ensure that it cannot be used as weapon, but that the police must obtain a warrant to examine the data on the phone. See *Riley*, 134 S Ct at 2484-2489. We do not read *Riley* as creating a broad rule that police must obtain a warrant to examine lawfully seized evidence. Instead, *Riley* is a search incident to arrest case where the only justifications for seizing the phone are to ensure officer safety and the preservation of evidence. In contrast, in the case of a blood draw, "[t]he only justification for the seizure of defendant's blood was the need to obtain evidence of alcohol content." *Snyder*, 852 F2d at 474. Given the context in which *Riley* was decided, we fail to see its relevance in a case where defendant consented to the search and seizure in question for the purposes of blood alcohol analysis.

[6] The implied consent statutes have since been amended, and the comparable provision may now be found at MCL 257.625(a)(6)(e).

[7] We note that there has been no suggestion that the police used defendant's blood sample for any purpose other than the analysis of her blood alcohol content.

the purposes of blood alcohol analysis. See *id.*; see also *State v Simmons*, 270 Ga App 301, 303; 605 SE2d 846 (2004) (considering Georgia's implied consent statute and concluding that consent once given could not be withdrawn); *Loveland*, 696 NW2d at 166 ("Once a urine sample is properly seized, the individual that provided the sample has no legitimate or reasonable expectation that the presence of illegal substances in that sample will remain private."). Absent a protected privacy interest, there is no "search" within the meaning of the Fourth Amendment and attempts to withdraw consent after a sample has been lawfully obtained would not render blood alcohol analysis unlawful.[8]

In considering whether a defendant may withdraw consent to a blood test after submitting a blood sample for testing, to the extent testing involves the police's continued possession of the blood sample, we also emphasize the established rule that when a suspect gives consent to a search and then revokes that consent, the revocation of consent does not "deprive the police of any evidence obtained during the consent search." *Powell*, 199 Mich App at 499. In other words, a defendant cannot withdraw consent after the seizure and thereby demand the return of evidence lawfully obtained during the consent search. *Id.* at 499, 501. More fully, in *Jones v Berry*, 722 F2d 443, 449 n 9 (CA 9, 1983), the Court rejected the assertion that the defendant could demand return of documents seized during a consent search, explaining:

> No claim can be made that items seized in the course of a consent search, if found, must be returned when consent is revoked. Such a rule would lead to the implausible result that incriminating evidence seized in the course of a consent search could be retrieved by a revocation of consent.

This approach is consistent with our decision in *Powell* and with the decisions of several other courts that have considered the issue. See *United States v Mitchell*, 82 F3d 146, 151 (CA 7

---

[8] According to defendant, the implied consent statute and concerns about drunk driving cannot lead to the conclusion that consent to a blood test cannot be withdrawn following the procurement of the voluntary sample. Specifically, defendant contends that such a result is foreclosed by *McNeely*, 133 S Ct at 1556, 1567, which held that "compelled blood draws implicate a significant privacy interest" and that the natural metabolization of alcohol did not create a per se exigency justifying nonconsensual, warrantless blood testing in all drunk driving cases. However, *McNeely* does not stand for the proposition that consent to blood testing may be withdrawn *after* a sample has been obtained with the suspect's consent. To the contrary, *McNeely* is entirely consistent with our analysis because in *McNeely*, before the sample was drawn, the defendant refused to grant consent to the blood test. Consequently, the blood was drawn without his consent. *Id.* at 1557. The fact that the defendant did not consent to the blood draw was significant because, while the Court acknowledged that motorists have a diminished expectation of privacy, the Court concluded that this "does not diminish a motorist's privacy interest in preventing an agent of the government *from piercing his skin*." *Id.* at 1565-1566 (emphasis added). In contrast, where the blood sample is obtained lawfully with the defendant's consent, this piercing of skin is wholly lawful and the fact remains that, once this sample has been lawfully obtained, testing of the sample does not constitute a second search.

1996); *United States v Guzman*, 852 F2d 1117, 1122 (CA 9 1988); *United States v Assante*, 979 F Supp 2d 756, 762 (WD Ky 2013); *United States v Grissom*, 825 F Supp 949, 953 (D Kan 1993); *State v Guscette*, 678 NW2d 126, 131 (ND 2004); *State v Myer*, 441 NW2d 762, 766 (Iowa 1989). Quite simply, withdrawal of consent after the search has been completed does not entitle a defendant to the return of evidence seized during the course of a consent search because those items are lawfully in the possession of the police; and, by the same token, a defendant who consents to the search in which evidence is seized cannot, by revoking consent, prevent the police from examining the lawfully obtained evidence.[9] In short, the examination of evidence procured pursuant to a consent search does not constitute a second search or seizure.

## IV. CONCLUSION

Ultimately, this is not a case about withdrawing consent to search; it is a case in which the search to obtain defendant's blood has been completed with her consent and defendant nevertheless wishes to prevent the police from examining the evidence—i.e., her blood—which was lawfully collected during the consent search.[10] However, once the blood was lawfully

---

[9] Defendant concedes that typically evidence seized during a consent search need not be returned, but she contends that this rule should not apply to prevent her from demanding the return of her blood because, unlike other types of evidence, it is not "immediately apparent" that her blood contains evidence of criminality. Such an argument is disingenuous because many types of evidence do not evince criminality without some analysis. For example, until tested, police may strongly suspect that a white power is cocaine, but it could also be sugar or talcum powder. See *Jacobsen*, 466 US at 122. Likewise, "a fingerprint . . . has no independent value to the police until it is tested and compared to other, previously collected fingerprints." *Raynor v State*, 440 Md 71, 91; 99 A3d 753, 764 (2014). Yet, we doubt that defendant would suggest that she could demand the return of a white powder found during a consent search or fingerprints voluntarily given to the police. In other words, we are not persuaded by defendant's argument that her proposed rule can be narrowly circumscribed to allow for the return of unanalyzed blood but not other types of evidence. If an individual may demand the return of blood obtained during a lawful consent search, provided that the blood has not yet been subjected to testing, the same reasoning would allow an individual to demand the return of almost any item seized during a lawful consent search, such as suspected drugs that have not been analyzed, a gun that has not yet been subjected to ballistics testing, fingerprints that have not yet been compared, documents that have not yet been read, etc. Such a rule is not consistent with *Powell*'s recognition that the police cannot be deprived of evidence lawfully obtained during the course of a consent search. And, clearly defendant's blood is evidence of her intoxication obtained during a consent search.

[10] On appeal, defendant analogizes this case to a consensual pat-down in which the suspect withdraws consent before a police officer reaches into the suspect's pocket containing baggies of possible drugs. Just as the suspect may prevent the search of his pocket by withdrawing consent, defendant contends she may prevent the search of her blood. Such a comparison is not apropos. Instead, to borrow defendant's analogy, we are faced with a situation in which the police have already, with defendant's consent, searched the pocket and seized the baggies. The question is

procured by the police pursuant to defendant's consent, the subsequent analysis of the blood did not constitute a separate search and defendant simply had no Fourth Amendment basis on which to object to the analysis of the blood for the purpose for which it was drawn. Stated differently, once police procured a sample of defendant's blood pursuant to her consent, she had no reasonable expectation of privacy in the blood alcohol content of that sample and it could be examined for that purpose without her consent. Consequently, defendant's efforts to withdraw consent after her blood had already been collected came too late to invalidate the consent search or to deprive police of the authority to analyze the lawfully obtained blood in their possession to determine defendant's blood alcohol content. It follows that defendant was not entitled to suppression of the result of her blood alcohol test, and the trial court did not err by denying defendant's motion to suppress.[11]

Affirmed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly

---

whether, having lawfully obtained the baggies, the police may analyze the contents of the baggies to ascertain whether or not the substance is a drug.

[11] As an alternative argument, the prosecutor argues that, even if defendant effectuated the withdrawal of her consent, there was probable cause to obtain a warrant for the analysis of defendant's blood. Having determined that defendant did not withdraw her consent in time to invalidate the analysis of her blood, we need not reach this issue.