*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 10, 2019

Plaintiff-Appellee,

v

No. 343800
Ingham Circuit Court
LC No. 16-000986-FC

ROBERT JERRY MILES,

Defendant-Appellant.

Before: MURRAY, C.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of delivery of a controlled substance less than 50 grams, MCL 333.7401(2)(a)(*iv*).[1] The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to 5 to 40 years' imprisonment.[2] Defendant appeals as of right, and we affirm.

## I. BACKGROUND

This case arises out of the death of Jody Mosher, who died of a drug overdose between the hours of 9:30 p.m. on September 12, 2014, and 1:30 a.m. on September 13, 2014. On September 12, 2014, Mosher asked her friend, Edward Hodge, whether he knew someone who could supply her heroin. Hodge, acting as an intermediary, sought out defendant—who Hodge knew only as "JJ"—for heroin. At approximately 6:00 p.m., Hodge drove Mosher from her residence in Webberville to defendant's residence in Lansing to complete the transaction. Hodge and Mosher met defendant at his residence on Redwood Street, and drove defendant to Deluca's,

---

[1] Defendant was acquitted of delivery of a controlled substance causing death, MCL 750.317a.

[2] On January 8, 2018, pursuant to a plea agreement, defendant was sentenced in federal court to 87 months' imprisonment for possession of heroin with intent to distribute, 21 USC 841(a)(1), and felon in possession of a firearm, 18 USC 922(g)(1). The trial court's sentence in this case was consecutive to defendant's federal term of imprisonment.

a restaurant near defendant's residence, to pick up food that defendant had recently ordered. While in the parking lot of Deluca's, Hodge observed defendant give Mosher a folded-up lottery ticket with a gray powdery substance inside in exchange for Mosher's Bridge card, which had a balance of approximately $300.[3] Hodge then drove defendant to a party store nearby to test Mosher's Bridge card, and eventually dropped off defendant at his residence on Redwood Street.

As Hodge drove out of defendant's driveway, he observed Mosher take the heroin intravenously. Within minutes, Mosher became unconscious and unresponsive. Hodge made numerous attempts to help Mosher regain consciousness, and eventually succeeded. Mosher slowly became more responsive as the evening went on, and Hodge stayed with Mosher while her condition improved. Hodge dropped Mosher off at her home in Webberville at approximately 11:00 p.m. According to Hodge, Mosher appeared "sixty percent" her normal, sober self, as she was walking, conversing, and breathing normal when she exited Hodge's vehicle. Unfortunately, Mosher was found deceased in her bedroom the next morning.

An autopsy report revealed that Mosher had several drugs in her system at the time of her death, including Citalopram (an antidepressant), Clonazepam (a benzodiazepine), Benadryl, and morphine (heroin). Mosher died of multiple drug intoxication, with each drug having a cumulative effect on Mosher's death. However, because the Citalopram, Clonazepam, and Benadryl were all at or slightly above normal, therapeutic doses, heroin was determined to be a substantial factor in Mosher's death.

## A. INVESTIGATION

Ingham County Sheriff Deputy Dustin Matusko initially investigated Mosher's death. On September 13, 2014, Deputy Matusko searched Mosher's belongings and found, in addition to various prescription bottles, a lottery ticket with heroin inside. Deputy Matusko also learned of Hodge's involvement in Mosher's death, and met with Hodge on September 23, 2014.[4] Hodge informed Deputy Matusko that a person named "JJ" sold Mosher heroin on September 12, 2014, with Hodge facilitating the transaction. Deputy Matusko passed Hodge's statement along to Ingham County Sheriff Officer Michael Torok, who worked as an undercover narcotics officer for Tri-County Metro Narcotics. Officer Torok met with Hodge, and Hodge lead Officer Torok to defendant's residence on Redwood Street. While Officer Torok did not observe defendant at his Redwood residence, Hodge identified defendant as the person he knew as "JJ" in a photographic lineup.

---

[3] According to Hodge, the actual value of Mosher's Bridge card was approximately $150 because Bridge card currency is not cash-equivalent, and is only worth approximately 50 cents on the dollar.

[4] As a result of his involvement in Mosher's death, Hodge was charged with delivery of a controlled substance causing death and delivery of a controlled substance less than 50 grams. Hodge pleaded guilty to involuntary manslaughter, MCL 750.321, and was sentenced to a term of one year in jail, 30 months' probation, and was ordered to cooperate with the investigation into Mosher's death.

On October 1, 2014, Lansing Police Officer Robert Backus lawfully stopped defendant's vehicle, which was occupied by defendant and defendant's girlfriend, Raquel Mobray, and observed—in plain view—13 marijuana plants within defendant's vehicle.[5] Defendant did not have a lawful right to possess the marijuana plants, and as a result, Officer Backus searched defendant and seized two cell phones found in defendant's coat pocket: a Samsung Galaxy cell phone and an LG cell phone. Both cell phones were processed as evidence, but were not searched at that time.

Meanwhile, Lansing Police Officer Angela Sukovich, who worked as an undercover narcotics officer with the Special Operation Section of the Lansing Police Department, learned of defendant's history of selling narcotics, and on October 20, 2014, Officer Sukovich set up the first of three controlled buys to purchase heroin from defendant.[6] During the first controlled buy, Officer Sukovich was originally supposed to meet defendant at his Redwood residence; however, defendant changed the meeting place to a nearby location. Officer Sukovich met with defendant, who identified himself as "JJ." On October 24, 2014, Officer Sukovich met with defendant again, this time at his Redwood residence. On October 27, 2014, Officer Sukovich met with defendant at a party store near his Redwood residence. Based on these contacts, a search warrant for defendant's Redwood residence was prepared and executed on October 28, 2014. During the search, police discovered defendant hiding in the attic, heroin inside of lottery tickets, and papers evidencing Mobray's residency at defendant's Redwood home.[7]

On October 31, 2014, Officer Sukovich prepared an affidavit in support of a search warrant for defendant's two cell phones that were seized during the October 1, 2014 traffic stop. The marijuana found in defendant's vehicle, as well as Officer Sukovich's training and experience as a narcotics officer (i.e., that drug traffickers frequently use cell phones to transport and sell narcotics), formed the basis for probable cause to search defendant's two cell phones. Notably, Officer Sukovich's affidavit did not reference her three meetings with defendant in October 2014, nor did it reference the evidence found during the October 28, 2014 search of defendant's Redwood residence. The data extracted from the Samsung cell phone revealed correspondences from defendant identifying himself as "JJ," while the data extracted from the

_____

[5] The October 1, 2014 traffic stop was initiated because defendant's vehicle matched a description of a vehicle involved in an assault. The trial court ruled that the marijuana plants, as well as the pretext for the traffic stop, were inadmissible at trial.

[6] While evidence of Officer Sukovich's contacts with defendant were presented to the jury, evidence of defendant selling Officer Sukovich heroin during these contacts was ruled inadmissible at trial. These controlled buys, however, resulted in defendant's January 18, 2018 federal convictions referenced above.

[7] The trial court later ruled that the heroin found at the Redwood residence and the evidence of defendant hiding in the attic during the search were inadmissible at trial.

LG cell phone indicated that the telephone number for the Samsung cell phone belonged to a person named "JJ."[8]

The investigation into Mosher's death remained stagnant until February 2016, when Lansing Police Detective Lee McCallister was asked to review the case. Based on his review of the prior investigation, Detective McCallister obtained a search warrant ordering Sprint, the provider of defendant's Samsung cell phone, to produce all call logs and cell tower locations for the Samsung cell phone during September 2014. From these records, Detective McCallister learned that Hodge and defendant had been in contact with one another just before 6:00 p.m. on September 12, 2014, and again at approximately 6:48 p.m. the same day. The call logs also indicated that defendant made a phone call to Deluca's in between the two phone calls with Hodge. Further, all of the cell towers that serviced defendant's Samsung cell phone on September 12, 2014, were within the area of defendant's Redwood residence. Detective McCallister also contacted the Department of Health and Human Services Office regarding the activity on Mosher's Bridge card. Detective McCallister learned that Mosher's Bridge card was used on September 13, 2014, and September 14, 2014, and that a balance inquiry for Mosher's Bridge card was conducted on September 15, 2014, from a telephone number belonging to Mobray.

## B. ADJUDICATION

Based on Detective McCallister's investigation, defendant was charged with delivery of a controlled substance less than 50 grams and delivery of a controlled substance causing death (delivery causing death). The prosecution filed a pretrial motion under MRE 404(b) seeking to introduce, among other evidence later ruled inadmissible, evidence of (1) the data extracted from defendant's cell phones, (2) Officer Sukovich's three contacts with defendant during October 2014, in which he identified himself as "JJ," and (3) the October 28, 2014 search revealing evidence of Mobray's residency at defendant's Redwood home. At the hearing for the prosecution's motion, defense counsel informed the trial court that he would file a motion to suppress the data extracted from defendant's cell phones, and the trial court ruled that the cell phone data was admissible subject to defense counsel filing a motion to suppress. However, defense counsel did not file a motion to suppress the data extracted from defendant's cell phones.

After a jury trial, defendant was acquitted of the delivery causing death charge, but was convicted of delivery of a controlled substance less than 50 grams. At sentencing, defendant objected to the prosecution's scoring of Offense Variable (OV) 3 (physical injury to a victim–death results from the commission of a crime) at 100 points, arguing that the jury's acquittal of the delivery causing death charge, and the fact that Mosher's death was the result of multiple

---

[8] While the Global Positioning System (GPS) information extracted from the Samsung cell phone demonstrated that the Samsung cell phone was near defendant's Redwood residence throughout September 2014, there was no GPS information for September 12, 2014. Also, the call logs extracted from the Samsung cell phone only dated back to September 26, 2014—after Mosher's death.

drug intoxication (not specifically heroin), demonstrated that Mosher's death did not result from defendant's commission of a crime. The trial court held that OV 3 was properly scored at 100 points, stating that defendant's acquittal of the delivery causing death charge was not dispositive because there was sufficient evidence to establish that Mosher's death, at least in part, resulted from defendant's delivery of heroin. Defendant was sentenced as described above, and was ordered to pay, among other costs, $500 in court costs.

After filing this appeal, defendant filed a motion to remand to the trial court for an evidentiary hearing, alleging that he received ineffective assistance of counsel when defense counsel failed to file a motion to suppress the data extracted from his cell phones, the trial court erred in scoring OV 12 (contemporaneous felonious criminal acts) at five points, and the trial court erred in assessing court costs. This Court denied defendant's motion to remand "for failure to persuade the Court of the necessity of a remand at this time." *People v Miles*, unpublished order of the Court of Appeals, entered January 24, 2019 (Docket No. 343800).

Defendant now appeals, challenging (1) the sufficiency of Officer Sukovich's affidavit in support of the search warrant to extract the data from defendant's cell phones, and defense counsel's failure to file a motion to suppress that data; (2) the trial court's scoring of OVs 3 and 12; and (3) the trial court's imposition of $500 in court costs against him. For the reasons stated below, we find no error warranting relief.

## II. AFFIDAVIT AND SEARCH WARRANT

Defendant first challenges the sufficiency of Officer Sukovich's affidavit in support of the October 31, 2014 search warrant to extract the data from defendant's two cell phones that were seized during the October 1, 2014 traffic stop. Specifically, defendant argues that Officer Sukovich's generalized assertions in the affidavit—that drug traffickers use cell phones to sell narcotics—do not, standing alone, support a finding of probable cause. We note that defendant failed to challenge the validity of Officer Sukovich's affidavit in the trial court. Instead, defendant only challenged the seizure of the cell phones without a warrant during the October 1, 2014 traffic stop, and the relevancy of the data extracted from defendant's cell phones. "[A]n objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003). Therefore, defendant's constitutional claim is unpreserved.

The standard of review for an unpreserved constitutional issue is plain error affecting the defendant's substantial rights. *People v Bosca*, 310 Mich App 1, 47; 871 NW2d 307 (2015), citing *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). To demonstrate plain error, a defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights." *Carines*, 460 Mich at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Even if a defendant establishes a plain error that affected his substantial rights, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*. at 763 (quotation marks, citation, and brackets omitted).

The United States and Michigan Constitutions both guarantee the right of citizens to be free from unreasonable searches and seizures. See US Const, Am IV; Const 1963, art 1, § 11; *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017). "A search for purposes of the Fourth Amendment occurs when the government intrudes on an individual's reasonable, or justifiable, expectation of privacy," while "a seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *People v Woodard*, 321 Mich App 377, 383; 909 NW2d 299 (2017) (quotation marks, citations, and brackets omitted). "In order to show that a search was in compliance with the Fourth Amendment, the police must show either that they had a warrant or that their conduct fell within one of the narrow, specific exceptions to the warrant requirement." *People v Kazmierczak*, 461 Mich 411, 418; 605 NW2d 667 (2000). Indeed, while police may seize a cell phone to prevent the destruction of evidence, a warrant is generally required before searching the data stored within a cell phone. *Woodard*, 321 Mich App at 391 n 5, citing *Riley v California*, 573 US 373, 384-403; 134 S Ct 2473; 189 L Ed 2d 430 (2014).

A search warrant may be issued only upon a showing of probable cause. US Const, Am IV; Const 1963, art 1, § 11; *Franklin*, 500 Mich at 100-101. "A reviewing court must give great deference to a magistrate's finding of probable cause to issue a search warrant." *People v Mullen*, 282 Mich App 14, 21; 762 NW2d 170 (2008). "Accordingly, we do not review de novo the lower court's determination regarding the sufficiency of a search warrant affidavit." *Id*. Rather, we need only ask "whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause." *Id*. (quotation marks and citation omitted). To find a substantial basis for probable cause, this Court "must ensure that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 22 (quotation marks and citation omitted). "When reviewing a search warrant affidavit, we must read it in a common sense and realistic manner, not a crabbed or hypertechnical manner." *Id*. at 27 (quotation marks and citation omitted).

Here, Officer Sukovich's affidavit stated that defendant was stopped on October 1, 2014, and found to be transporting marijuana plants, in plain view, without a lawful right to possess marijuana. Specifically, Officer Sukovich's affidavit states that, based on (1) her training and experience as an undercover narcotics officer, (2) the number of marijuana plants found during the stop, (3) the fact that defendant was transporting marijuana in his vehicle, and (4) the multiple cell phones recovered from defendant during the stop, there was probable cause to believe defendant's cell phones would contain evidence of defendant's criminal activity— namely, drug trafficking. Officer Sukovich's affidavit establishes probable cause, as it demonstrates a connection between defendant's illegal possession and transportation of marijuana, and an instrumentality of his criminal activity—his cell phones. *Id*. at 21-22. Thus, based on these facts, there was a fair probability that evidence of defendant's criminal activity would be found on defendant's cell phones. *Id*.

Defendant argues that "Officer Sukovich's affidavit literally has no facts connecting [defendant's] phone[s] to the allegations of drug possession and delivery in this case," and the affidavit is based on "generalized statements" regarding drug dealers' use of cell phones to traffic narcotics. What defendant characterizes as "generalized statements," however, we deem relevant "facts within the knowledge of the affiant," that are not based on "mere conclusions or beliefs." *People v Waclawski*, 286 Mich App 634, 698; 780 NW2d 321 (2009). While an affiant

"may not draw his or her own inferences, but must state the matters that justify the drawing of inferences," an "affiant's experience is relevant to the establishment of probable cause." *Id*. Here, the affidavit states that Officer Sukovich has learned through her training and experience as an undercover narcotics officer that drug dealers frequently use cell phones to transport and sell narcotics. Also, the record reflects that, prior to her drafting the affidavit, Officer Sukovich had first-hand knowledge of defendant's history as a drug dealer by way of the three controlled buys in October 2014. Accordingly, not only was Officer Sukovich's affidavit sufficiently particularized to connect defendant's criminal activity to his cell phones, but Officer Sukovich properly drew on her training and experience as an undercover narcotics officer—as well as her own personal observations of defendant's criminal activity—to support a finding of probable cause.[9] *Id*.; *Mullen*, 282 Mich App at 21-22.

Nor is it of any relevance that police seized defendant's cell phones and extracted the data stored within them for one purpose—evidence of defendant's drug trafficking—only to be used for a wholly different purpose—evidence of defendant's involvement in Mosher's death. "Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now-nonprivate information." *United States v Jacobsen*, 466 US 109, 117; 104 S Ct 1652; 80 L Ed 2d 85 (1984). That is, "[t]he Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated." *Id*. While defendant undoubtedly held a protected privacy interest in his cell phone data, that privacy interest dissipated—for Fourth Amendment purposes—once police obtained a valid search warrant and extracted the cell phone data pursuant to that search warrant. *Id*. It is of no consequence that police initially sought the search warrant to examine defendant's cell phone records for evidence of drug trafficking, but later used that data to connect defendant to Mosher's death. Once defendant's cell phones were lawfully seized, and the data stored within his cell phones extracted pursuant to a valid search warrant, defendant no longer held a reasonable expectation of privacy in that cell phone data. See *id*.; see also *Woodard*, 321 Mich App at 387 (quotation marks and citations omitted) ("We recognize that obtaining and examining evidence may be considered a search, provided that doing so infringes an expectation of privacy that society is prepared to recognize as reasonable.").

Defendant relies on *Riley*, 573 US at 384-403, in arguing that the affidavit in support of the search warrant to extract the data from his cell phones violated his constitutional right to be free from unreasonably searches and seizures. It is true, as the United States Supreme Court recognized in *Riley*, that "the possible intrusion on privacy is not physically limited in the same way when it comes to cell phones," as "many sensitive records" and a "broad array of private information" may be stored within a cell phone. *Id*. at 394, 396-397. However, the rule

---

[9] Moreover, because police extracted the data from defendant's cell phones in reliance on a search warrant issued by a magistrate, and because that reliance was objectively reasonable, the exclusion of that cell phone data would not be appropriate in this case. *People v Goldston*, 470 Mich 523, 543; 682 NW2d 479 (2004) (adopting the good-faith exception to the exclusionary rule where "police officers' good-faith reliance on the search warrant was objectively reasonable").

established in *Riley*—that *warrantless* cell phone searches intrude upon an individual's privacy interests—does not reach so far as to invalidate a properly obtained search warrant, supported by an affidavit establishing probable cause, permitting the search of defendant's cell phones that were lawfully seized. See *Woodard*, 321 Mich App at 391 n 5 ("[T]he Court[, in *Riley*, 573 US at 384-403,] determined that a cell phone may be seized to prevent destruction of evidence and the physical phone may [be] examined to ensure that it cannot be used as weapon, but that the police must obtain a warrant to examine the data on the phone."). Thus, defendant's reliance on *Riley* is erroneous.

We also reject defendant's argument that he received ineffective assistance of counsel when defense counsel failed to file a motion to suppress, or otherwise challenge, the admissibility of the data extracted from his cell phones on Fourth Amendment grounds. As previously discussed, Officer Sukovich's affidavit for the search warrant supported a finding of probable cause, and the search of defendant's cell phones was properly executed. Therefore, any objection to the fruits of that search would have been futile, and defendant did not receive ineffective assistance of counsel as a result. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

## III. OV SCORING

Next, defendant argues that the trial court erred in assessing 100 points for OV 3 (physical injury to a victim) and five points for OV 12 (contemporaneous felonious criminal acts). In considering an alleged scoring error, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), superseded by statute on other grounds in *People v Rodriguez*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 338914); slip op at 3 n 3. "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015) (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438. "[I]f the trial court clearly erred by finding that a preponderance of the evidence supported one or more of the OV scores or otherwise erred by applying the facts to the OVs, and if the scoring error resulted in an alteration of the minimum sentence range, [a defendant] would be entitled to resentencing." *People v Biddles*, 316 Mich App 148, 156; 896 NW2d 461 (2016) (citations omitted). Judicial fact-finding continues to be part of the process of calculating a defendant's guidelines minimum sentence range. See *id.* at 159-161, citing *People v Lockridge*, 498 Mich 358, 392 n 28; 870 NW2d 502 (2015).

OV 3 addresses physical injury to a victim. MCL 777.33(1); *People v Laidler*, 491 Mich 339, 343; 817 NW2d 517 (2012). A trial court must assess 100 points under OV 3 "if death results from the commission of a crime and homicide is not the sentencing offense." MCL 777.33(2)(b); *Laidler*, 491 Mich at 343. The relevant inquiry under OV 3 is whether the death "resulted" from defendant's criminal actions, i.e., whether defendant's criminal conduct is a "factual" or "but for" cause of the death. *Laidler*, 491 Mich at 344-345. OV 3 must be scored based on the sentencing offense alone, *Biddles*, 316 Mich App at 165, which in this case was

delivery of a controlled substance (heroin) less than 50 grams. However, in scoring an offense-specific OV, "a trial court may properly consider all of defendant's conduct during that offense." *People v Chelmicki*, 305 Mich App 58, 72; 850 NW2d 612 (2014) (quotation marks and citations omitted). In fact, because the preponderance of the evidence standard applies to the scoring of a defendant's guidelines minimum sentence range, facts may be scored at sentencing which were not proven beyond a reasonable doubt at trial. See *People v Ratkov (After Remand)*, 201 Mich App 123, 126; 505 NW2d 886 (1993) ("[S]ituations may arise wherein although the factfinder declined to find a fact proven beyond a reasonable doubt for purposes of conviction, the same fact may be found by a preponderance of the evidence for purposes of sentencing.").

Here, Mosher's death resulted from defendant's commission of a crime—namely, the delivery of heroin. Stated differently, but for defendant's delivery of heroin to Mosher, Mosher's death would not have occurred. See *Laidler*, 491 Mich at 345. The evidence at trial established that defendant sold Mosher heroin that eventually lead to her drug overdose and death. There is no evidence that Mosher obtained heroin from a source other than defendant. Also, Mosher's death was the result of an "agonal overdose," as opposed to an immediate overdose, in which Mosher survived a few hours after initially ingesting heroin. This coincides with Hodge's testimony at trial that Mosher regained consciousness after taking the heroin that defendant sold her. Accordingly, the trial court properly concluded, by a preponderance of the evidence, that Mosher's death resulted from defendant's delivery of heroin. *Id*. at 345-346.

Defendant points out that Mosher died of multiple drug intoxication, arguing that heroin was not the sole cause of Mosher's death because the other prescription drugs that she ingested had a cumulative effect on her death. Defendant's argument fails for two reasons. First, the testimony of the toxicologist and the medical examiner demonstrates that heroin was a factual cause of Mosher's death. The toxicologist testified that the prescription drugs Mosher ingested were at or slightly above normal, therapeutic levels and were not at lethal doses. On the other hand, there is no safe dosage for heroin. Also, the toxicologist opined that heroin was a substantial factor in Mosher's death, while the medical examiner opined that Mosher likely would have survived had she not ingested heroin. Accordingly, the testimony from these experts establishes that, but for Mosher ingesting heroin—which defendant illegally delivered to her— Mosher's death would not have occurred. Second, while the experts could not say for certain that heroin was the sole cause of Mosher's death, "[t]here is nothing in MCL 777.33 that suggests that there may be only a single cause of a death." *Id*. at 346. Therefore, the trial court properly assessed 100 points for OV 3.

Defendant also argues that the trial court erred in assessing five points for OV 12 because his single criminal act, delivery of a controlled substance less than 50 grams, was the extent of his criminal activity, and he did not commit a separate, contemporaneous felonious criminal act. While we find some merit in defendant's argument,[10] we decline to address the issue because it

---

[10] MCL 777.42 addresses a defendant's "contemporaneous felonious criminal acts," which is an act that (1) occurred within 24 hours of the sentencing offense, and (2) has not and will not result in a separate conviction. In *People v Light*, 290 Mich App 717, 723; 803 NW2d 720 (2010) (emphasis added), this Court held that "when scoring OV 12, a court must look beyond the

does not change defendant's guidelines minimum sentence range. See *Biddles*, 316 Mich App at 156 (stating that, with respect to an evidentiary challenge to a trial court's scoring of OVs, a defendant is only entitled to resentencing "if the scoring error resulted in an alteration of the minimum sentence range"). Accordingly, defendant is not entitled to resentencing.

## IV. COURT COSTS

Finally, defendant argues that the $500 in court costs imposed against him under MCL 769.1k operate as an unconstitutional tax, violating both the Distinct Statement Clause of the Michigan Constitution, and separation-of-powers principles as an impermissible delegation of our Legislature's taxing authority. Because defendant did not raise this issue before the trial court, the issue is unpreserved. *People v Konopka (On Remand)*, 309 Mich App 345, 356; 869 NW2d 651 (2015). We review unpreserved issues for plain error affecting a defendant's substantial rights. *Carines*, 460 Mich at 763-764.

Under MCL 769.1k(1)(b)(*iii*), trial courts can impose court costs on defendants as long as those costs are "reasonably related to the actual costs incurred by the trial court." *People v Cameron*, 319 Mich App 215, 221; 900 NW2d 658 (2017). In *Cameron*, this Court held that such court costs constitute a tax, but that the statutory authorization of that tax did not run afoul of our state Constitution's Distinct Statement Clause, Const 1963, art 4, § 32, or separation of powers provision, Const 1963, art 3, § 2. *Cameron*, 319 Mich App at 236. Indeed, the only requirement of imposing such court costs under MCL 769.1k(1)(b)(*iii*) is that a trial court must " 'establish a factual basis' for the costs imposed" to ensure that they are "reasonably related to those incurred by the court in cases of the same nature." *Cameron*, 319 Mich App at 230, 236, quoting *Konopka*, 309 Mich App 359-360. Here, the trial court assessed $500 in court costs against defendant based on the State Court Administrative Office's calculated average cost of a criminal case in Ingham County. This finding constitutes a sufficient factual basis for the trial court's imposition of court costs against defendant. *Cameron*, 319 Mich App at 230, 236. Further, because we are bound by this Court's decision in *Cameron*, defendant has failed to establish any error, plain or otherwise, warranting relief. See MCR 7.215(J)(1).

---

sentencing offense and consider *only those separate acts or behavior that did not establish the sentencing offense.*" Defendant points out that, once he delivered the heroin to Mosher, the elements of the sentencing offense were complete, and he did not commit a contemporaneous felonious criminal act thereafter. This position appears to be in accordance with our decision in *Light*, and thus, would not support a finding that defendant committed a contemporaneous felonious criminal act.

Affirmed.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood