# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KRISTOPHER ALLEN HUGHES,

        Defendant-Appellant.

UNPUBLISHED
September 25, 2018

No.  338030
Oakland Circuit Court
LC No.  2016-260154-FC

Before:  TUKEL, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

Defendant, Kristopher Allen Hughes, appeals as of right his conviction of armed robbery, MCL 750.529.  Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 25 to 60 years' imprisonment.  We affirm.

Defendant's conviction arises from an armed robbery in the early morning hours of August 6, 2016.  A prostitute who was seeking to purchase drugs initially called defendant to the victim's residence.  At one point, while the victim and the prostitute were engaged in a sexual act, defendant re-entered the residence and pointed a gun at them.  Defendant instructed the prostitute to tie up the victim while he searched for the key to the victim's safe.  The victim testified that he had about $4,200 to $4,300 in the safe at that time.  Eventually, he heard the door close twice and realized the defendant and the prostitute had left.  The safe also was gone. The victim believed that defendant and the prostitute were acting together to commit the robbery, although she was not charged.  At trial, the prostitute claimed that she was not in on the robbery. She acknowledged that she tied the victim up but claimed it was at defendant's direction.  She also acknowledged receiving money from defendant afterwards, but claimed that she thought it was "hush" money.  The prostitute identified defendant as the robber and said he went by the name of "Killer."

At trial, the prosecution presented several exhibits containing summaries of cellular phone data which was extracted from the phone defendant had in his possession when he was arrested.  There was strong proof that the phone was defendant's.  In addition to defendant's possession of the phone at the time of his arrest, the prosecution introduced evidence that the phone contained several pictures of defendant, including three "selfies," and numerous messages that contained references to "Kill," "Killa," "Kris," and "Kristopher."  The phone data established that there were 19 phone calls on August 6, 2016, the date of the robbery, between

-1-

the prostitute and defendant. Further, the records established that they exchanged several text messages between August 5 and August 10, 2016.

## I. CELL PHONE CONTENTS/DATA

On appeal, defendant argues that the phone records were obtained unlawfully and in violation of his Fourth Amendment rights, and that they should have been excluded from evidence. We disagree.

We note that defendant challenged the admission of the cellular phone records on grounds that it was stale, irrelevant, and potentially prejudicial. He did not argue below that the search and seizure was illegal. "[A]n objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003). Therefore, this constitutional claim is unpreserved.

The standard of review for an unpreserved constitutional issue is plain error affecting the defendant's substantial rights. *People v Bosca*, 310 Mich App 1, 47; 871 NW2d 307 (2015). To demonstrate plain error, a defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Even if a defendant establishes a plain error that affected his substantial rights, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 763-764 (quotation marks, citation, and brackets omitted).

The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11; *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). "[A] search for purposes of the Fourth Amendment occurs when the government intrudes on an individual's reasonable, or justifiable, expectation of privacy." *People v Antwine*, 293 Mich App 192, 195; 809 NW2d 439 (2011) (citation and quotation marks omitted). "A seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v Jacobsen*, 466 US 109, 113; 104 S Ct 1652; 80 L Ed 2d 85 (1984). Whether a search and seizure is lawful depends on whether it is reasonable. *People v Nguyen*, 305 Mich App 740, 751; 854 NW2d 223 (2014). "Whether a search is reasonable is a fact-intensive determination and must be measured by examining the totality of the circumstances." *People v Mullen*, 282 Mich App 14, 21; 762 NW2d 170 (2008) (quotation marks and citation omitted). Generally, searches conducted without a warrant are unreasonable per se. *Lavigne v Forshee*, 307 Mich App 530, 537; 861 NW2d 635 (2014). An unlawful search involving police misconduct generally requires suppression of the evidence. *People v Hyde*, 285 Mich App 428, 439; 775 NW2d 833 (2009). Thus, absent misconduct, exclusion is inappropriate. *People v Hill*, 299 Mich App 402, 411-415; 829 NW2d 908 (2013).

With regard to cell phones, a warrant generally is required before searching the information contained in a cell phone. *Riley v California*, 537 US ___, ___;134 S Ct 2473, 2484-2489; 189 L Ed 2d 430 (2014). Here, a search warrant for defendant's phones in an unrelated case involving drug-trafficking was issued and subsequently executed on August 12, 2016. It authorized seizure of any cell phones found and permitted a forensic or manual search, with any data retrieved to be preserved and recorded. Defendant's argument is that the evidence should have been excluded because the warrant was issued with regard to a separate criminal case, and the subsequent analysis of the data in regard to the present armed robbery case constituted a separate search for which no probable cause or warrant existed.

Defendant fails to cite any authority for the proposition that cell phone data lawfully seized for one case cannot be analyzed for another case without a separate warrant supported by probable cause. He also presents no support for the proposition that further analysis of data that already is lawfully in police possession for an unrelated case constitutes police misconduct. We reject defendant's position. The Supreme Court has stated that "[o]nce frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now-nonprivate information." *Jacobsen*, 466 US at 117. Rather, "[t]he Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated." *Id*.

Assuming that the initial seizure of the cell phone and data was lawful pursuant to the August 12 search warrant,[1] the question becomes whether the subsequent search of the cell phone requires a separate search warrant. This Court recognizes that "obtaining and examining evidence may be considered a search, provided that doing so infringes an expectation of privacy that society is prepared to recognize as reasonable." *People v Woodard*, 321 Mich App 377, 387; 909 NW2d 299 (2017) (quotation marks and citations omitted). Here, the phone data already had been lawfully extracted from defendant's phone pursuant to the August 12 search warrant. Hence, defendant no longer had a reasonable expectation of privacy related to that data after the execution of the search warrant. See *Jacobsen*, 466 US at 117. The fact that the search warrant was for an unrelated case is not relevant. What is relevant is that defendant's privacy rights were protected and any invasion into his privacy was authorized by a valid search warrant. See *Woodard* at 390 ("[W]e note that the defendant could not plausibly assert any expectation of privacy with respect to the scientific analysis of a lawfully seized item of tangible property . . . .") (quotation marks and citation omitted). Accordingly, because defendant had no reasonable expectation of privacy related to his cell phone data after it had been seized and searched pursuant to a valid search warrant, he cannot show how that data's use in this case constituted a violation of his Fourth Amendment rights.[2]

---

[1] Defendant does not challenge the validity of that initial search warrant.

[2] We also reject defendant's argument that defense counsel provided ineffective assistance by failing to object to the introduction of the cell phone data on these Fourth Amendment grounds. As already discussed, defendant's rights were not violated by the use of that data, which had already been obtained pursuant to a valid search warrant. Consequently, any objection would

Defendant's reliance on *Riley v California* is misplaced. The United States Supreme Court in *Riley* held that officers could not search the contents of a cell phone after seizing the phone in a warrantless search incident to arrest. *Riley*, 134 S Ct at 2485. *Riley* is wholly inapplicable for the simple reason that defendant's phone here had been seized and searched pursuant to a valid search warrant. In other words, an arrestee who is subject to a search incident to arrest still has privacy rights that must be protected, and those rights are protected by requiring a search warrant. See *id.* at 2485, 2488-2491. Here, defendant's privacy rights were protected because defendant's phone was specifically seized pursuant to a warrant authorizing the retrieval, preservation, and recording of the data content. Because defendant's reasonable expectation of privacy had been extinguished through the issuance of a valid search warrant, he was not entitled to demand that any subsequent use of the same evidence be supported by a second search warrant. See *Jacobsen*, 466 US at 117 ("The Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated.").

## II. OPPORTUNITY FOR JURY TO REVIEW TRANSCRIPTS

In his Standard 4 brief, defendant argues that he is entitled to automatic reversal of his conviction because the trial court violated Michigan law by effectively foreclosing the jury's opportunity to review transcripts of witness testimony. We disagree.

MCR 2.513(P) provides as follows:[3]

> If, after beginning deliberation, the jury requests a review of certain testimony or evidence that has not been allowed into the jury room under subrule (O), the court must exercise its discretion to ensure fairness and to refuse unreasonable requests, but it may not refuse a reasonable request. The court may make a video or audio recording of witness testimony, or prepare an immediate transcript of such testimony, and such tape or transcript, or other testimony or evidence, may be made available to the jury for its consideration. The court may order the jury to deliberate further without the requested review, as long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed.

"A defendant does not have a right to have a jury rehear testimony. Rather, the decision whether to allow the jury to rehear testimony is discretionary and rests with the trial court." *People v Carter*, 462 Mich 206, 218; 612 NW2d 144 (2000). However, when a jury requests to rehear testimony and the trial court instructs the jury in a manner which precludes any possibility of later reviewing that testimony, it errs. *Id.* at 208.

---

have been futile, and counsel is not ineffective for failing to raise a futile or meritless objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

[3] We note that defendant's argument on appeal relies on MCR 6.414(H), which was repealed in 2011 and replaced by MCR 2.513(P), which substantively has the same language.

In this case, prior to jury selection, the trial court judge stated the following to the potential jurors:

> Now, just as a preliminary matter, if you haven't noticed we don't have a court reporter in this court or actually in this whole courthouse. All the courtrooms in this courthouse are video courtrooms. So, you can see that there are cameras all around and microphones and so everything is recording. Now, I say that to indicate to you that it used to be that we used to get notes from jurors saying can we have transcripts of such and such witness. And, even then when we did have a court reporter, who used to take things down shorthand, it would be difficult obviously to get a transcript to the jury. So, that was usually—we weren't able to do that. So, obviously with a video courtroom we don't have a court report [sic] that can transcribe things. Things—videos will be sent out and then we get transcriptions later.

Defendant argues that these statements "effectively" foreclosed the option of obtaining the transcript and thus constituted error requiring reversal.

As a threshold matter, although the jury sent a number of notes to the trial judge, it never requested to rehear trial testimony. Thus, MCR 2.513(P) was never at issue because it applies only to a "jury request" made "after beginning deliberation." Moreover, the preliminary instruction given by the trial judge about the length of time it would take to get transcripts, if the jury requested them during deliberations, was simply to reinforce for the jury that it should not rely on the availability of transcripts, and that "I'll allow you to take notes, and if need be -- but otherwise you'll have to rely on your collective memory[.]" In other words, the trial judge was illustrating for the jury the importance of paying close attention to the testimony during the trial, which was entirely appropriate. Furthermore, by making this statement prior to the beginning of testimony, the trial court provided the jury with a warning that the transcripts would not be immediately available, but the court did not foreclose the possibility that transcripts would be available in the future. The trial court committed no error in this instruction.

Even assuming that the trial court's instruction was erroneous, we still would decline to reverse for a new trial. Defendant relies on *People v Smith*, 396 Mich 109; 240 NW2d 202 (1976) (concluding that the harmless error doctrine was inapplicable to preemptive instruction foreclosing rereading of testimony because it resulted in lack of factual basis for review), and *People v Howe*, 392 Mich 670; 221 NW2d 350 (1974) (concluding that the trial court's abuse of discretion in rejecting a reasonable request from the jury required reversal of the defendant's conviction because there was no way to determine from the record the extent of the jury's confusion regarding the requested testimony), in support of his theory that this Court is bound to automatically reverse his conviction. Furthermore, defendant argues that automatic reversal is appropriate under *People v Grant*, 445 Mich 535, 555; 520 NW2d 123 (1994), on the basis that this case falls within "the category of cases . . . where prejudice is presumed or reversal is automatic." However, these arguments are unavailing because since *Smith*, *Howe*, and *Grant*, the Michigan Supreme Court has recognized that the "automatic reversal rule" relied on in cases involving the jury's ability to review transcripts was superseded by the plain error rule set forth in *Carines*, 460 Mich 750. *People v Tucker*, 469 Mich 903 (2003). Thus, to succeed on this claim of error, which was unpreserved, defendant must affirmatively demonstrate a plain error

affecting his substantial rights. See *People v Vaughn*, 491 Mich 642, 654; 821 NW2d 288 (2012).

A review of the record does not give any indication that the trial court's instruction prior to jury selection had any effect on the outcome of the lower court proceedings. The trial court did not repeat the instruction during the final jury instructions or otherwise refer to the jury's ability or inability to review testimony. There is nothing in the record to suggest that the challenged instruction may have caused the jury to refrain from asking to review trial testimony. Indeed, with each of the 17 jury notes (most of which involved non-substantive issues, such as scheduling) it received during the jury's deliberation, the trial court read the note on the record and informed counsel of the actions taken by the court in response to each request. This included requests for review of the evidence, including a request to replay a recording of the victim's 911 call. A review of the record reflects that the jury did not request to rehear any specific testimony nor was the jury denied any request to review any evidence. Accordingly, defendant has failed to establish any plain error affecting his substantial rights.

Affirmed.

/s/ Jonathan Tukel
/s/ Jane M. Beckering
/s/ Douglas B. Shapiro