*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SPENCER RICHARD ANDREWS,

        Defendant-Appellant.

UNPUBLISHED
May 14, 2020

No. 345895
Oakland Circuit Court
LC No. 2018-266994-FH

Before: MURRAY, C.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

Defendant, Spencer Richard Andrews, appeals as of right his jury convictions of conspiracy to deliver or possess with the intent to deliver methylenedioxymethamphetamine (MDMA), MCL 333.7401(2)(b)(*i*) and MCL 750.157a; delivery or possession with intent to deliver MDMA, MCL 333.7401(2)(b)(*i*); possession of the controlled substance ketamine, MCL 333.7403(2)(b)(*ii*); and possession of the controlled substance amphetamine, MCL 333.7403(2)(b)(*ii*). The trial court sentenced defendant to concurrent terms of 7 to 20 years' imprisonment for the conspiracy and delivery or possession with intent to deliver MDMA[1] convictions and one to two years' imprisonment for the possession of controlled substances convictions. This appeal is being decided without oral argument pursuant to MCR 7.214(E)(1). We affirm.

## I. UNDERLYING FACTS

In November 2017, United States Custom and Border Patrol (CBP) Officers received and inspected a package that arrived at the John F. Kennedy airport in New York, New York, from Belgium. The package was addressed to Devin Patrick in Pontiac, Michigan. CBP determined that the package was suspicious and opened the package to find over 1,000 grams of MDMA. CBP resealed the package and contacted United States Department of Homeland Security Special Agent Weidman at the Detroit office. Special Agent Weidman obtained custody of the package and

---

[1] MDMA is often referred to by one of its common street names, Ecstasy.

contacted the Oakland County Narcotics Enforcement Team (OCNET) to execute a controlled delivery of the package.

OCNET Detective Charles Harvey Liggett arranged for the package to be delivered on November 20, 2017, to Patrick's address, through the United States Postal Service. Royal Oak Police Department Detective Jason Manning observed the United States postal inspector deliver a large brown cardboard box to an unidentified person at the front door of Patrick's residence. At some point that day, Detective Manning observed a vehicle that was driven by Vince Malone stop at Patrick's residence. Defendant and Malone exited the vehicle and entered the house from the side entrance. Approximately 15 minutes later, defendant exited the house carrying the package that the postal inspector had delivered. Defendant placed the package in the trunk of the vehicle and sat in the passenger seat of the vehicle. Malone then drove away from Patrick's residence.

Oakland County Sheriff's Office (OCSO) Detective Scott Panin conducted a traffic stop of Malone and defendant. During a cursory search, police found a large amount of cash on defendant's person. Detective Panin also found a cell phone in the passenger seat of the vehicle.

Defendant told Detective Liggett that "he was on his way to deliver a package to his friend Devon [sic] Patrick, which is where that package was addressed to" when he was stopped. Detective Liggett responded that defendant's statement was not true because the police officers observed defendant arrive and leave Patrick's house; he also told defendant that was the reason for the traffic stop. OCSO Corrections Deputy James Richardson searched defendant when he arrived at the Oakland County jail. Deputy Richardson found one bag with approximately 0.5 grams of a white powdery substance and another bag with approximately 6.5 crushed tablets or what appeared to Deputy Richardson to be crushed pills and a 2 or 3-inch metal spoon. Deputy Wiegmann gave the bags and items that Deputy Richardson had removed from defendant to Detective Liggett.

During the traffic stop, Detective Liggett searched Malone's vehicle and, in the trunk of the vehicle, found the package that was addressed to Patrick and a lockbox containing marijuana. The package was a brown paper box that contained a bass amplifier or speaker box. The speaker was wooden and, within the speaker, there was a clear plastic bag of MDMA wrapped in foil cellophane. Detective Liggett testified that the purpose of this wrapping and packaging was to avoid detection of the odor of the substance.

After the traffic stop, Detectives Liggett and Manning returned to Patrick's house to conduct a search pursuant to the search warrant. Detective Manning found a rolled dollar bill with a white powdery substance and marijuana on a television stand in the basement. Detective Manning testified that the basement was arranged as Patrick's bedroom. Detective Manning also found two glass vials, one of which had a white powdery residue in it, located in a dresser drawer. According to Detective Manning, glass vials were used to package cocaine, ketamine, and methamphetamine for sales of those drugs. The police officers also found 190 tabs of LSD, empty gel capsules, and small clear plastic bags suitable for packaging drugs or pills that were located on a table near a couch, $150 in a dresser drawer and a black digital scale on the television stand. On November 21, 2017, Detective Liggett interviewed defendant while he was in police custody. The jury found defendant guilty of conspiracy to deliver or possess with the intent to deliver MDMA, delivery or possession with intent to deliver MDMA, possession of ketamine, and possession of amphetamine.

## II. SEARCH OF DEFENDANT'S CELL PHONE

Defendant argues that the evidence and testimony presented at trial of the contents of his cell phone were not within the scope of his consent to the search of the phone. Defendant also argues that he was deprived of his right to effective assistance of counsel regarding this claim. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

To preserve an issue regarding a trial court's evidentiary ruling, a defendant must raise that particular issue in the trial court and raise the same basis for objection on appeal. *People v Gaines*, 306 Mich App 289, 306; 856 NW2d 222 (2014). Defendant failed to challenge the scope of the search of his cell phone at trial. Thus, the issue of the evidentiary ruling is unpreserved.

Unpreserved issues are reviewed for plain error. *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks, citations, and brackets omitted).]

"A 'clear or obvious' error under the second prong is one that is not 'subject to reasonable dispute.' " *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018). In the instant context, prejudice "requires a showing . . . that the error affected the outcome of the lower court proceedings." *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014) (quotation marks and citation omitted).

To properly preserve a claim of ineffective assistance of counsel, a defendant must move for either a new trial or a *Ginther*[2] hearing in the trial court; failure to make any such motion "ordinarily precludes review of the issue unless the appellate record contains sufficient detail to support the defendant's claim." *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). Defendant moved for a remand, but this Court denied his motion

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

without prejudice. *People v Andrews*, unpublished order of the Court of Appeals, entered July 11, 2019 (Docket No. 345895). Thus, the issue of ineffective assistance of counsel is preserved.

Regardless of whether a claim of ineffective assistance is properly preserved, if the trial court did not hold a *Ginther*[3] hearing, "our review is limited to the facts on the record." *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). However, because defendant moved for a remand for a *Ginther* hearing in this Court, and this Court denied the motion without prejudice, we may consider evidence not in the record for the limited purpose of considering whether we now believe a remand for a *Ginther* hearing would be appropriate. See *People v Moore*, 493 Mich 933, 933; 825 NW2d 580 (2013). "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008).

B. ANALYSIS

The United States and Michigan Constitutions prohibit unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. In general, searches or seizures conducted without a warrant are per se unreasonable. *People v Woodard*, 321 Mich App 377, 383; 909 NW2d 299 (2017). Evidence obtained from an unreasonable search and seizure must be excluded from trial. *Id*. But a warrantless search is not unreasonable if a defendant consents to the search or seizure. *Id*. at 383-384. "The consent exception permits a search and seizure if the consent is unequivocal, specific, and freely and intelligently given." *People v Mahdi*, 317 Mich App 446, 460; 894 NW2d 732 (2016). A defendant may limit the scope of his or her consent and may revoke the consent. *Id*. at 461. " 'The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect.' " *Id*. (citation omitted).

Defendant consented to a search of his cell phone so the police could corroborate his statement that an individual named Zac[4] Escobol arranged the drug delivery and that Escobol was involved in a larger drug trafficking trade. While defendant expressed concern that the search could uncover personal information, he failed to state that any area of his cell phone was off limits to the police during their search or to specify for the police any area of his cell phone where this information could be held other than a single statement that a "few texts" and one phone call might be relevant. Thus, a typical reasonable person would have understood that the police could search the entirety of defendant's cell phone for information about Escobol because the police had no way to know where exactly on defendant's cell phone they could find information corroborating defendant's allegations about Escobol. Consequently, defendant consented to the search of his cell phone.

Because it was reasonable that defendant's pictures and text conversations, even conversations with other individuals, could corroborate his story that Escobol was a drug dealer,

---

[3] No *Ginther* hearing was held in this case.

[4] Or possibly Zach.

-4-

his consent encompassed a search of all of his cell phone's texts and pictures. Furthermore, defendant's trial attorney was not ineffective for failing to challenge the scope of defendant's consent to search his cell phone because any objection would have lacked merit. See *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007) ("Counsel is not ineffective for failing to make a futile objection."). We find no reason to reconsider our previous denial of defendant's motion to remand for a *Ginther* hearing.

## III. RELEVANCE OF CELL PHONE RECORDS

Defendant next argues that the contents of his cell phone were not relevant to the charged offenses, the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, and the evidence constituted inadmissible other-acts evidence. We disagree.

## A. WAIVER

As an initial matter, defendant waived the issue of the admissibility of cell phone records regarding his communications with Patrick and Escobol. Waiver occurs when a defendant "affirmatively approve[s]" of an issue before the trial court, only to later argue on appeal that there was error. *People v Jackson*, 313 Mich App 409, 420; 884 NW2d 297 (2015). "Because error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence," a defendant's approval of a trial court decision waives the right to appeal. *People v Gonzalez*, 256 Mich App 212, 224; 663 NW2d 499 (2003), disapproved in part on other grounds 469 Mich 967 (2003) (citation and quotation marks omitted). When waiver occurs, any error is extinguished "and precludes defendant from raising the issue on appeal." *People v Carter*, 462 Mich 206, 209, 215; 612 NW2d 144 (2000). At trial, defense counsel asked the trial court to limit admission of defendant's phone records to "those [individuals] involved in the conspiracy," only objecting to admission of defendant's phone records that related to communications with such other individuals. Thus, the issue of the admissibility of defendant's communications with Patrick and Escobol is waived because defense counsel affirmatively approved of their admission into evidence.

## B. PRESERVATION AND STANDARD OF REVIEW

Defense counsel objected to the admission at trial of defendant's communications with other individuals on that same grounds challenged on appeal. Thus, defendant's challenge to the admission of that evidence is preserved. See *Gaines*, 306 Mich App at 306. But defense counsel only challenged the admissibility of other information from defendant's cell phone, such as photographs and word term searches conducted on the contents of the phone, on grounds different from those challenged on appeal. Thus, defendant's challenge to the admission of that evidence is not preserved. See *id*.

When properly preserved, this Court "review[s] for an abuse of discretion a trial court's decision to admit or exclude evidence," and reviews any preliminary legal questions of law de novo. *People v Mann*, 288 Mich App 114, 117; 792 NW2d 53 (2010). Preliminary questions of law require a court to determine "whether a rule of evidence or statute precludes admissibility of the evidence." *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and

principled outcomes." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). "A trial court also necessarily abuses its discretion when it makes an error of law." *People v Al-Shara*, 311 Mich App 560, 566; 876 NW2d 826 (2015). "[A] trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Cameron*, 291 Mich App 599, 608; 806 NW2d 371 (2011) (quotation marks and citation omitted).

As stated earlier in Part II(A), unpreserved issues are reviewed for plain error. See *Cain*, 498 Mich at 116.

## C. ANALYSIS

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *People v Martzke*, 251 Mich App 282, 293; 651 NW2d 490 (2002) (citation and quotation marks omitted). "Under this broad definition, evidence is admissible if it is helpful in throwing light on any material point." *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001).

Under MRE 403, however, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "MRE 403 does not prohibit prejudicial evidence; rather, it prohibits evidence that is unfairly prejudicial. In essence, evidence is unfairly prejudicial when there exists a danger that marginally probative evidence might be given undue weight by the jury." *People v Dixon-Bey*, 321 Mich App 490, 513; 909 NW2d 458 (2017).

> "In reviewing the trial court's decision for an abuse of discretion, the appellate court must view the evidence in the light most favorable to its proponent, giving 'the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.' " "[T]he draftsmen intended that the trial judge be given very substantial discretion in 'balancing' probative value on the one hand and 'unfair prejudice' on the other, and that the trial judge should not be reversed simply because an appellate court believes it would have decided the matter otherwise." *People v Head*, 323 Mich App 526, 540-541; 917 NW2d 752 (citations and footnote omitted; alteration in original).

MRE 404(b) provides, in relevant part:

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

-6-

MRE 404(b) is a rule of inclusion of circumstances under which other-acts evidence may be admissible even though it may also give rise to an inference about the defendant's character. *People v Jackson*, 498 Mich 246, 259; 869 NW2d 253 (2015). "Relevant other acts evidence does not violate [MRE] 404(b) unless it is offered solely to show the criminal propensity of an individual to establish that he acted in conformity therewith." *People v VanderVliet*, 444 Mich 52, 65; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). If the prosecution shows that the evidence is offered for nonpropensity purposes, the evidence is admissible unless its probative value is substantially outweighed by the danger of unfair prejudice pursuant to MRE 403. See *Jackson*, 498 Mich at 259-260.

The elements of possession of a controlled substance with intent to deliver under MCL 333.7401 are "(1) that a defendant possessed a controlled substance, (2) that the defendant knew he or she possessed the controlled substance, (3) that the defendant intended to deliver the controlled substance to someone else, and (4) the amount of the controlled substance, if applicable." *People v Robar*, 321 Mich App 106, 131; 910 NW2d 328 (2017). In order to prove a conspiracy under MCL 750.157a, the prosecution must demonstrate that two or more persons agreed to do an unlawful act or that two or more persons agreed to do a legal act using illegal means. *People v Seewald*, 499 Mich 111, 118; 879 NW2d 237 (2016). Therefore, the offense of conspiracy to deliver a controlled substance or possess a controlled substance with the intent to deliver requires proof of an agreement between two or more persons to deliver or possess with the intent to deliver a controlled substance. See *id*.

In this case, the text messages defendant exchanged with Patrick and Escobol on the day of the controlled delivery were relevant to each person's involvement in the drug delivery and the conspiracy to deliver or possess with intent to deliver MDMA. The text messages and photographs of methamphetamine and drug activity demonstrated that defendant was familiar with various drugs and drug sales, which was relevant to defendant's knowledge that he possessed a controlled substance. Additionally, the text messages regarding defendant's previous activity selling and purchasing drugs from as early as July 2016 was relevant to the scope of the conspiracy to deliver or possess with the intent to deliver MDMA to another person in November 2017. This evidence was relevant to establishing the conspiracy among defendant, Patrick, and Escobol and was relevant to challenging the defense that defendant was a drug user and did not know that the package he was delivering contained drugs. See MRE 401; *Martzke*, 251 Mich App at 293.

Additionally, the probative value of the text messages and photographs was not substantially outweighed by the danger of unfair prejudice. The evidence was probative of defendant's knowledge that he possessed a controlled substance and that he intended to deliver or possess with the intent to deliver the MDMA to another individual. The evidence established that defendant was involved in purchasing and selling drugs with Patrick and Escobol and that defendant made arrangements with Escobol and Patrick to participate in the delivery of MDMA on November 20, 2017. Defendant's cell phone records were not the type of evidence that would mislead or confuse the jury. Furthermore, defendant failed to demonstrate that the evidence inserted extraneous considerations to the merits of the case, such as appeals to the jury's bias, sympathy, anger, or shock. See *People v Fisher*, 449 Mich 441, 451-452; 537 NW2d 577 (1995). This evidence was much more than marginally probative and, therefore, its prejudicial effect did not substantially outweigh its probative value. See MRE 403; *Fisher*, 449 Mich at 453-454.

Finally, the text messages and photographs did not constitute inadmissible other-acts evidence. MRE 404(b) applies to prior acts, but not to prior statements. *People v Goddard*, 429 Mich 505, 518; 418 NW2d 881 (1988). A text message is a form of communication, not an act. Thus, a text message is a statement and, therefore, is not within the scope of MRE 404(b). Instead, these text messages should be considered admissions by a party-opponent because they were defendant's statements, offered by the prosecution to establish the elements of the offenses against defendant. See MRE 801(d)(2)(A). Further, the evidence was offered for nonpropensity purposes, including defendant's knowledge that the package contained a controlled substance and knowledge that he was participating in the agreement with Patrick and Escobol to possess, transport, and deliver the package containing MDMA. The evidence also demonstrated that, based on his previous drug activity and previous arrangements with Patrick and Escobol for a package of MDMA to be delivered to Patrick's address, defendant likely was not mistaken regarding the contents of the package. Thus, the contents of defendant's cell phone were offered for a nonpropensity purposes and did not constitute inadmissible other-acts evidence. See *Jackson*, 498 Mich at 259-260.

The trial court did not err by admitting the text messages between defendant and the unnamed individuals who were not involved in the drug conspiracy. Similarly, the trial court did not err by admitting the other contents of defendant's cell phone, including the photographs and the text messages exchanged between defendant, Escobol, and Patrick.

## IV. PATRICK'S TEXT MESSAGES

Defendant next argues that the text messages contained in Patrick's cell phone were not relevant to the charged offenses and constituted inadmissible hearsay evidence. We disagree because, as discussed earlier in Part III(A), defendant waived this issue.

## V. RELEVANCE OF EVIDENCE FROM PATRICK'S HOUSE

Defendant also argues that evidence obtained from Patrick's house was not relevant, the probative value was substantially outweighed by the danger of unfair prejudice, and the evidence constituted inadmissible other-acts evidence. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Because defendant challenged the relevancy of evidence obtained from Patrick's residence at trial, this issue is preserved. See *Gaines*, 306 Mich App at 306. But defendant failed to argue at trial or in any motions that this evidence was prejudicial or inadmissible other-acts evidence. Thus, defendant's challenge to the admissibility of evidence from Patrick's residence is unpreserved as to those grounds. See *id*.

Defendant's preserved evidentiary challenge is reviewed for an abuse of discretion. See *Mann*, 288 Mich App 117. His unpreserved challenge, however, is reviewed for plain error. See *Cain*, 498 Mich at 116.

B. ANALYSIS

Detective Liggett obtained a warrant to search Patrick's residence. Defendant does not argue that the police officers lacked authority pursuant to the warrant to search Patrick's house or that the evidence that the police officers seized exceeded the scope of the warrant. Instead, he argues only that the evidence seized from Patrick's house was not admissible at trial.

The evidence of drug activity that was obtained from Patrick's residence was relevant to the charge of conspiracy to deliver or possess with the intent to deliver MDMA. The evidence included containers that were used to package and sell drugs and a digital scale to weigh drugs for sale. Although there was no evidence presented that defendant entered Patrick's basement or that any of the evidence seized from Patrick's house belonged to defendant, the evidence of drug activity was relevant to the scope of the conspiracy to deliver MDMA. The evidence demonstrated that Patrick was involved in drug activity, which, on the basis of the packaging materials, could have included drug sales. This drug activity could have been a part of the conspiracy among defendant, Patrick, and Escobol, which was supported by evidence that defendant had previously communicated with Patrick and Escobol regarding the purchase and sale of ketamine and MDMA, and the fact that defendant received the package with 1,000 grams of MDMA from Patrick's house. It was a matter for the jury to determine whether this evidence demonstrated drug activity related to the conspiracy among defendant, Patrick, and Escobol or whether the drug activity was not related to the charges against defendant. See *Dunigan*, 299 Mich App at 582 (explaining that it is the jury's role to determine the weight and credibility of the evidence). Because the evidence seized from Patrick's residence had a tendency to prove one or more facts of consequence and an element of the conspiracy offense, the evidence was relevant. See MRE 401; *Martzke*, 251 Mich App at 293.

Additionally, the probative value of the evidence of drug activity was not substantially outweighed by the danger of unfair prejudice. The evidence was probative of Patrick's involvement in the packaging, sale, and delivery of controlled substances. The evidence of drug activity that could be related to MDMA was probative of the conspiracy among defendant, Patrick, and Escobol to deliver or possess with the intent to deliver MDMA and that the conspiracy could have included other sales and deliveries of MDMA in addition to the delivery on November 20, 2017. There was evidence that defendant remained in the house for approximately 15 minutes and that defendant possessed controlled substances and a metal spoon when the police officers arrested him, showing that defendant could have obtained the drugs and spoon from Patrick's house in furtherance of the conspiracy. Additionally, defendant did not demonstrate that the evidence confused or mislead the jury. Defendant also failed to demonstrate that the evidence inserted extraneous considerations to the merits of the case, such as appeals to the jury's bias, sympathy, anger, or shock. See *Fisher*, 449 Mich at 451-452. Thus, the evidence seized from Patrick's residence related to drug activity was probative of the elements of the conspiracy offense, and defendant did not demonstrate that the evidence was inadmissible on the basis of the danger of unfair prejudice. See MRE 403; *Fisher*, 449 Mich at 453-454.

Finally, the evidence seized from Patrick's residence did not constitute inadmissible other-acts evidence. As stated earlier, MRE 404(b) applies to prior acts. See *Goddard*, 429 Mich at 518. To the extent that the evidence suggested that Patrick was a drug user, the evidence did not directly portray Patrick using controlled substances or suggest that Patrick had previous drug-related

convictions. The evidence also did not directly portray defendant as a drug user or suggest that defendant had previous drug-related convictions. Further, the evidence was offered for nonpropensity purposes, including Patrick's and defendant's knowledge that the package contained a controlled substance and knowledge that they were participating in the agreement with Escobol to possess, transport, and deliver the package containing MDMA. Accordingly, the contents of defendant's cell phone did not constitute inadmissible other-acts evidence. See *Jackson*, 498 Mich at 259-260.

## VI. OV 19

Defendant argues that the trial court improperly scored offense variable (OV) 19 and that OV 19 is unconstitutionally vague. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

Defendant failed to challenge the constitutionality of OV 19 before the trial court. Thus, this issue is not properly preserved for appellate review. *People v Sands*, 261 Mich App 158, 160; 680 NW2d 500 (2004). Defendant did, however, challenge the scoring of OV 19 at sentencing. Thus, the scoring issue is preserved. See MCL 769.34(10); *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016).

"Trial courts are afforded broad discretion in calculating sentencing guidelines, and appellate review of those calculations is very limited. Scoring decisions for which there is any evidence in support will be upheld." *People v Elliott*, 215 Mich App 259, 260; 544 NW2d 748 (1996) (citation omitted). When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Antwine*, 293 Mich App 192, 194; 809 NW2d 439 (2011) (citation and quotation marks omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438. Finally, because defendant's challenge to the constitutionality of OV 19 is unpreserved that issue is preserved for plain error. See *Cain*, 498 Mich at 116.

### B. ANALYSIS

The trial court properly assessed 10 points for OV 19 because the evidence and testimony presented at trial supported the conclusion that defendant interfered with the administration of justice.

The trial court is required to assess 10 points for OV 19 when "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). A trial court may consider conduct that occurs after the defendant completes the sentencing offense when the trial court scores OV 19. *People v Smith*, 488 Mich 193, 195, 202; 793 NW2d 666 (2010).

"[T]he plain and ordinary meaning of 'interfere with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). "Our Supreme Court has determined that the phrase 'interfered with or attempted to interfere with the administration of justice' is broader than the concept of obstruction of justice and that conduct subject to scoring under OV 19 'does not have to necessarily rise to the level of a chargeable offense . . . .' " *People v Passage*, 277 Mich App 175, 179-180; 743 NW2d 746 (2007) (citation omitted). Conduct that interferes with the administration of justice includes actions that would impede an investigation, such as providing a false name to the police, attempting to deceive the police during their investigation, or threatening or intimidating victims or witnesses. *Hershey*, 303 Mich App at 344; *People v Barbee*, 470 Mich 283, 288; 681 NW2d 348 (2004). Attempting to deceive police during an investigation can constitute interference or attempted interference with the administration of justice. See *Barbee*, 470 Mich at 288; *Hershey*, 303 Mich App at 344.

In this case, the evidence supports the legal conclusion that defendant interfered with the police investigation and attempted to deceive the police officers. Defendant provided several statements to the police officers during his arrest that were not consistent with his statements to Detective Liggett during their interview. Defendant stated that Patrick did not know Escobol, but then later stated that Escobol arranged the drug delivery on November 20, 2017, and that he and Escobol had used Patrick's address for a previous delivery of MDMA. Defendant also told Detective Liggett that he would not have picked up the package had he known the amount of MDMA. However, Patrick made defendant aware of the size of the package, and defendant nonetheless arrived at Patrick's to pick up the package of MDMA. By providing the police with this false information, defendant attempted to obfuscate the police officers' investigation of the drug conspiracy and the respective roles of defendant, Patrick, and Escobol in the purchase and sale of controlled substances. Defendant's contradictory statements also established that defendant attempted to minimize his role in the delivery of MDMA and the conspiracy among himself, Patrick, and Escobol.

There was sufficient evidence to show that defendant attempted to deceive the police officers. See *Barbee*, 470 Mich at 288; *Hershey*, 303 Mich App at 344. This is not to say that OV 19 should necessarily be scored any time a defendant fails to convey the complete truth to a police officer. Nevertheless, it is appropriate to score OV 19 where a defendant engages in "fabrications that were self-serving attempts at deception obviously aimed at leading police investigators astray or even diverting suspicion onto others and away from him." *People v Ericksen*, 288 Mich App 192, 204; 793 NW2d 120 (2010). Thus, the trial court did not err by assessing 10 points for OV 19 on the basis of defendant's interference or attempted interference with the administration of justice pursuant to MCL 777.49(c). See *Barbee*, 470 Mich at 288.[5]

We now turn to defendant's argument that OV 19 is unconstitutionally vague. Statutes are presumed to be constitutional and are so construed unless their unconstitutionality is clearly

---

[5] Additionally, "a sentence within the guidelines range is presumptively proportionate." *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008).

apparent. *People v Deroche*, 299 Mich App 301, 305; 829 NW2d 891 (2013). The party challenging the constitutionality of a statute has the burden of proving its invalidity. *People v Sadows*, 283 Mich App 65, 67; 768 NW2d 93 (2009). In determining whether a statute is unconstitutionally vague, a court must consider the entire text of the statute and accord the words their ordinary meanings. *People v Roberts*, 292 Mich App 492, 497; 808 NW2d 290 (2011).

> A statute may be challenged for vagueness on three grounds: (1) it is overbroad and impinges on First Amendment freedoms, (2) it does not provide fair notice of the conduct proscribed, or (3) it is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed. *Id.* (quotation marks and citation omitted).]

Defendant specifically challenges the constitutionality of MCL 777.49 for failure to give fair notice. To give fair notice, the statute "must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *People v Perez-DeLeon*, 224 Mich App 43, 46; 568 NW2d 324 (1997) (citation omitted). A statute is not unconstitutionally vague if its meaning is "fairly ascertainable by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words." *People v Lockett*, 295 Mich App 165, 174; 814 NW2d 295 (2012) (quotation marks and citation omitted).

As discussed earlier, OV 19 repeatedly has been interpreted as applying to affirmative conduct that impedes a criminal investigation, even if that conduct occurred after the offense. See, e.g., *Barbee*, 470 Mich at 288; *Hershey*, 303 Mich App at 344. Furthermore, conduct may be considered to have "interfered with the administration of justice" even if that conduct does not rise to the level of a criminal obstruction of justice charge. Consequently, a person of ordinary intelligence has a reasonable opportunity to know what type of conduct is prohibited if he or she read these opinions. Similarly, Michigan courts have consistently required a defendant to commit an affirmative act that impedes an investigation or court proceedings to constitute interference with the administration of justice. See, e.g., *Barbee*, 470 Mich at 288; *Hershey*, 303 Mich App at 344. Thus, MCL 777.49 is not unconstitutionally vague.

## VII. CONCLUSION

For the reasons stated earlier, defendant's convictions and sentences are affirmed.

/s/ Christopher M. Murray
/s/ Amy Ronayne Krause
/s/ Jonathan Tukel