*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 17, 2020

Plaintiff-Appellee,

v

No. 344855
Chippewa Circuit Court
LC No. 16-003032-FH

JOSEPH PETER BALLAS,

Defendant-Appellant.

Before: REDFORD, P.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals by right his convictions and sentence following a jury trial. Defendant's charges related to methamphetamine activities he engaged in with his son and his son's girlfriend in Sault Ste. Marie in July 2016. Defendant was sentenced to concurrent terms of 6 to 20 years' incarceration. For the reasons set forth below we affirm defendant's convictions and sentence. [1]

## I. FACTUAL BACKGROUND

In July 2016, Brandon Ballas (BB), defendant's son, and Brittany Johnson (BJ), BB's girlfriend, moved in with defendant. Between July 5, 2016, and July 6, 2016, the three of them purchased 288 pseudoephedrine pills. Suspecting that they were planning to use the pills to make methamphetamine, the police conducted surveillance on July 7, 2016, during which they observed

---

[1] The matter defendant appeals is a second trial. The first trial regarding these activities resulted in a hung jury on nearly all counts. Following trial in the instant case, defendant was convicted of conspiracy to commit possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*); conspiracy to operate or maintain a laboratory involving methamphetamine, MCL 333.7401c(2)(f); operating and maintaining a laboratory involving methamphetamine, MCL 333.7401c(2)(f); and operating or maintaining a methamphetamine laboratory involving hazardous waste, MCL 333.7401c(2)(c). Also on retrial the trial court dismissed a charge of maintaining a drug house, MCL 333.7405(d), and the jury acquitted defendant of delivery or manufacture of methamphetamine, MCL 333.7401(2)(b)(*i*).

BB and BJ purchasing from stores various components typically used to make methamphetamine. These materials included, in addition to pseudoephedrine, cold packs, batteries, and lighter fluid.

The police followed BB and BJ back to the residence. BB noticed cars gathering and suspected law enforcement and went into the garage. A detective and an agent knocked on the door while another detective positioned himself to observe if anyone fled the house. BB left the garage and a detective detained him in the backyard. The detective testified that, as he arrested BB, he saw evidence of the production of methamphetamine. The police arrested and took all three to the station for questioning. After obtaining a search warrant, a methamphetamine response team searched the residence and seized various items that were consistent with the production of methamphetamine. As part of plea agreements, BB and BJ agreed to testify against defendant.

## II. ANALYSIS

In his appeal defendant raises five assignments of error. We will address them in the order raised by defendant.

## A. JUDICIAL IMPARTIALITY

Defendant first argues that the trial court pierced the veil of judicial impartiality during defense counsel's cross-examination of BB. We disagree.

"The question whether a judge's conduct has denied a defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Swilley*, 504 Mich 350, 370; 934 NW2d 771 (2019) (quotation marks and citation omitted). "A trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality." *People v Stevens*, 498 Mich 162, 164; 869 NW2d 233 (2015). "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. In *Stevens*, our Supreme Court instructed:

> In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors, including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. This list of factors is not intended to be exhaustive. Reviewing courts may consider additional factors if they are relevant to the determination of partiality in a particular case. Moreover, the aggrieved party need not establish that each factor weighs in favor of the conclusion that the judge demonstrated the appearance of partiality for the reviewing court to hold that there is a reasonable likelihood that the judge's conduct improperly influenced the jury. The reviewing court must consider the relevance and weigh the significance of each factor under the totality of the circumstances of the case. [*Id*. at 172 (citation omitted).]

In this case, after BB testified on direct examination regarding how he, BJ, and defendant purchased pseudoephedrine and how defendant manufactured methamphetamine, the following exchange occurred during defense counsel's cross-examination of BB shortly after a bench conference off of the record:

*Q.* [BB], please tell me between these two statements which is the lie, okay. You and [defendant] bought components on July 7th or was it you and Brittany? Which is the lie?

*A.* I don't really remember too much of what you're even saying right now.

*Q.* On July 7th, when the cops came to the house, when you got back home, which is the lie. It was you and Brittany buying components or you and [defendant] buying components?

*A.* Me—

[*Prosecutor*]: Objection, Your Honor, as to the form of the question. I think the question is who did he buy it with on the 7th? I don't understand the form.

*The Court*: He said he was at Wal-Mart with Brittany Johnson. On direct examination he said he went to Wal-Mart was with Brittany Johnson and went to several stores. I mean he's testified to that, so I mean, and that was on July 7th.

[*Defense Counsel*]: So the answer would be the lie would be [defendant] and him.

*The Court*: But he never said [defendant]. I don't know where you're coming up with that.

[*Defense Counsel*]: Actually he did testify to that during my questioning, Your Honor. We have gone there, and he did say that him and [defendant].

[*Prosecutor*]: It's been gone over. Asked and answered three times, Your Honor.

*The Court*: I know, it's just getting very confusing.

[*Defense Counsel*]: Actually, Your Honor, if I'm asking to give a statement, tell me which one's the lie it's not asked and answered. It's having it clarified for the jury.

*The Court*: According to him neither would be lies because he said he went—he said he went to Walgreen's with [defendant] the first time. Then he was observed going to Rite-Aid, Family Dollar, Wal-Mart, McDonald's with Brittany Johnson. I mean it can't be more clear than that.

[*Defense Counsel*]: But then on my question, Your Honor, and perhaps we should be doing this outside the presence of the jury.

*The Court*: Why he's testified to it.

[*Defense Counsel*]: But he did just say to me on my question, Your Honor that it was him and [defendant] running around to buy components. So I do have the right to ask this question to clarify for the jury that is determining my client's life.

*The Court*: Just—if could [sic] get to the point because it's very confusing. I think he's confused. I'm confused. I think Mr. Meidt is confused. If we could just narrow it down to what you're talking about.

The record reflects that, consistent with defense counsel's assertion, BB testified that he and BJ purchased components on July 7, 2016. The record, however, reflects that, contrary to defense counsel's assertion, BB never testified on cross-examination that he and defendant purchased components on July 7, 2016. Review of the direct and cross-examination of BB indicates that the trial court interjected questions to clarify BB's testimony when defense counsel appeared to have been confused about BB's testimony. The trial court's brief questioning did not prejudice defendant's case. The exchange between counsel and the trial court does not support defendant's contention that the trial court lacked impartiality or mistreated defense counsel.

Further, "the presence or absence of a curative instruction is a factor in determining whether a court displayed the appearance of advocacy or partiality." *Id*. at 177. In this case, the trial court instructed the jury as follows:

It is my duty to see that the trial is conducted according to the law, and tell you the law that applies to this case. However, when I make a comment or give an instruction, I am not trying to influence your vote or express a personal opinion about this case. If you believe that I have a personal opinion about this case, you should completely disregard that.

"Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Although "judicial conduct may so overstep its bounds that no instruction can erase the appearance of partiality," *Stevens*, 498 Mich App at 177-178, the record in this case reflects that the trial court did not display conduct entitling defendant to relief.

## B.  OFFENSE VARIABLE 15

Defendant argues that the trial court erred in assessing five points for Offense Variable (OV) 15 rather than zero points. We disagree.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Clear error exists when we are "left with a definite and firm conviction that a mistake was made." *People v Blevins*, 314 Mich App 339, 348-349; 886

NW2d 456 (2016). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

OV 15 relates to "aggravated controlled substance offenses," and five points are properly assessed when, "[t]he offense involved the delivery or possession with intent to deliver marihuana or any other controlled substance or a counterfeit controlled substance or possession of controlled substances or counterfeit controlled substances having a value or under such circumstances as to indicate trafficking[.]" MCL 777.45(1)(h). "Deliver" is defined as "the actual or constructive transfer of a controlled substance from 1 individual to another regardless of remuneration." MCL 777.45(2)(a). "Trafficking" is defined as "the sale or delivery of controlled substances or counterfeit controlled substances on a continuing basis to 1 or more other individuals for further distribution." MCL 777.45(2)(c).

Our Supreme Court explained in *People v Jackson*, 497 Mich 857, 857; 852 NW2d 897 (2014), that assessment of five points for OV 15 is proper where evidence exists of delivery of drugs because a "proper reading of MCL 777.45(1)(h) reveals two alternative bases for scoring that OV at five points: (1) when the offense involved the delivery or possession with intent to deliver marihuana or any other controlled substance or counterfeit controlled substance; and (2) when the offense involved possession of controlled substances or counterfeit controlled substances having a value or under such circumstances as to indicate trafficking." In this case, the trial court properly considered the evidence and correctly concluded that the evidence supported assessing defendant five points for OV 15 because he shared methamphetamine with BB and BJ. Sharing of a controlled substance involves delivery of it, i.e., the transfer of it from one person to another. Evidence established that defendant did exactly that. The trial court, therefore, did not err by assessing defendant five points for OV 15.

## C. DOUBLE JEOPARDY

Defendant argues that he was convicted of operating and maintaining a laboratory involving methamphetamine and operating or maintaining a laboratory involving methamphetamine within 500 feet of a residence, and that such convictions violated the Double Jeopardy Clause. We disagree.

Although we generally review de novo a double-jeopardy challenge, which presents an issue of constitutional law, an unpreserved double-jeopardy claim is reviewed for plain error affecting defendant's substantial rights. *People v Ackah-Essien*, 311 Mich App 13, 30; 874 NW2d 172 (2015). In this case, defendant failed to preserve this issue for appellate review. To establish the right to relief, defendant must prove that 1) an error occurred, 2) the error was plain, i.e., clear or obvious, and 3) the plain error affected defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). If defendant proves these three requirements, "an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted).

The United States and the Michigan Constitutions protect a defendant from being placed twice in jeopardy for the same offense. US Const Am V; Const 1963, art 1, § 15. "Jeopardy attaches when a jury is selected and sworn and the Double Jeopardy Clause therefore protects a defendant's interest in avoiding multiple prosecutions even when no prior determination of guilt or innocence has been made." *People v Grace*, 258 Mich App 274, 279; 671 NW2d 554 (2003) (citation omitted). "The prohibition against double jeopardy protects individuals in three ways: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *People v Miller*, 498 Mich 13, 17; 869 NW2d 204 (2015) (quotation marks and citation omitted). "The first two protections comprise the 'successive prosecutions' strand of double jeopardy, while the third protection is known as the 'multiple punishments' strand." *Id*. The purpose of the double-jeopardy protection against multiple prosecutions for the same offense is "to preserve the finality of judgments in criminal prosecutions and to protect the defendant from prosecutorial overreaching," while the purpose of the double-jeopardy protection against multiple punishments for the same offense is "to protect the defendant from having more punishment imposed than the Legislature intended." *People v Ford*, 262 Mich App 443, 447-448; 687 NW2d 119 (2004) (citation omitted).[2]

Defendant asserts that the jury convicted him of Count 4, operating or maintaining a laboratory involving methamphetamine, and Count 6, operating a laboratory involving methamphetamine within 500 feet of a residence. He contends that such offenses constitute the "same offense" under the "same-elements" test articulated in *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932). Examination of the record, in particular the jury's verdict, the judgment of sentence, and the transcript of the sentencing hearing, all establish that the jury convicted of Counts 1, 3, 4, 5, 7, and 12, and the trial court sentenced defendant to serve concurrent prison terms of 6 to 20 years for each of those convictions. The record does not support his contention that the jury convicted him of Count 6 or that the trial court imposed a sentence related to that count. Defendant's argument, therefore, utterly lacks merit. Defendant cannot establish that the jury convicted him of the same offense or that the trial court sentenced him to punishment for the same offense. Accordingly, defendant has failed to establish any plain error and certainly has failed to prove that the trial court violated the prohibition against double jeopardy.

D. SEARCH AND SEIZURE

Defendant next argues that the trial court erred by failing to suppress the evidence seized at the residence. He asserts that (1) the officers committed an illegal search at the time that they knocked on the door and sought to talk, and (2) the officers searched the residence before the magistrate signed the search warrant. We find no basis for reversal.

We review the trial court's factual findings in a suppression hearing for clear error but review de novo the trial court's ultimate decision on a motion to suppress. *People v Hyde*, 285

_____

[2] Defendant does not argue that the "successive prosecutions" strand applies in this case nor could he. The trial court granted the prosecutor's motion for a *nolle prosequi* on the operating a laboratory involving methamphetamine within 500 feet of a residence charge before the first jury trial. Accordingly, the "successive prosecutions" strand does not apply in this case.

Mich App 428, 436; 775 NW2d 833 (2009). We also review de novo a determination regarding whether a Fourth Amendment violation occurred and whether the exclusionary rule applied. *People v Woodard*, 321 Mich App 377, 382; 909 NW2d 299 (2017).

The United States and Michigan Constitutions both guarantee the right of citizens to be free from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. A "search" occurs when "the government intrudes on an individual's reasonable, or justifiable, expectation of privacy," and a "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Woodard*, 321 Mich App at 383 (quotation marks and citations omitted). The lawfulness of a search or seizure depends upon its reasonableness, which depends on the totality of the circumstances. *Id*. Evidence seized in violation of the constitutional prohibition against unreasonable searches and seizures must generally be excluded at trial. *Id*. A search or seizure conducted without a warrant is generally unreasonable unless there is probable cause and an exception to the warrant requirement. *Id*. "One of the exceptions to the Fourth Amendment warrant requirement is the so-called 'exigent circumstances' exception." *People v Henry (After Remand)*, 305 Mich App 127, 138; 854 NW2d 114 (2014) (quotation marks and citation omitted). Among the recognized exigencies is the need to preclude a suspect's escape, the need to prevent the imminent destruction of evidence, and to minimize the risk of danger to the police inside or outside a dwelling. *Id*.

## 1. KNOCK AND TALK

Defendant contends that the officers committed an illegal search at the time they conducted the knock and talk. We disagree.

"Generally, the knock and talk procedure is a law enforcement tactic in which the police, who possess some information that they believe warrants further investigation, but that is insufficient to constitute probable cause for a search warrant, approach the person suspected of engaging in illegal activity at the person's residence (even knock on the front door), identify themselves as police officers, and request consent to search for the suspected illegality or illicit items." *People v Frohriep*, 247 Mich App 692, 697; 637 NW2d 562 (2001). When a knock and talk is performed "within its proper scope," it is not a search. *People v Frederick*, 500 Mich 228, 234; 895 NW2d 541 (2017). "[A]pproaching a home with the purpose of gathering information is not, standing alone, a Fourth Amendment search." *Id*. at 241. However, "when conjoined with a trespass, information-gathering—which need not qualify as a search, standing alone—is all that is required to turn the trespass into a Fourth Amendment search." *Id*. (quotation marks and citation omitted).

In this case, defendant cannot establish that the police performed an unconstitutional search. Although a detective "took a tactical position off the corner of the house," he testified that he could not see around the corner of the house but stood in a position where he could hear if someone exited the house or see if an individual came into his view. The detective testified that when he "got to the back of the house," BB was exiting so he detained him. The record reflects that the detective did not engage in information gathering but only inadvertently saw incriminating evidence in the backyard fire pit in the process of detaining BB. The facts and circumstances in this case do not establish that the detective trespassed for the purpose of information gathering. Rather, the police suspected the manufacture of a controlled substance on the premises and were

concerned that a suspect would attempt escape. These exigencies supported the detective's conduct. The detective did not go to the back of the house to perform information gathering and search of the area. Accordingly, the detective did not perform an unconstitutional "search."

## 2. SEARCH WARRANT

Defendant also contends that the officers searched the home before the magistrate signed the search warrant because he saw a hazmat team present at the time of his arrest and speculates that the team entered the house immediately following the knock and talk. The record does not support his contention.

The record indicates that one agent remembered seeing the fire department at the scene wearing hazmat suits when he conducted the knock and talk and testified that the fire department attended the scene to wait outside in case of a fire. The agent did not remember seeing the methamphetamine response team at the scene when he conducted the knock and talk. Further, the record establishes that the methamphetamine response team did not enter the house until after the magistrate signed the search warrant. Defendant's arguments are without merit because he has failed to establish a factual predicate to sustain his claim of a constitutional violation.

## E. PROSECUTORIAL MISCONDUCT

Defendant also argues that the prosecutor committed misconduct by referencing BB's and BJ's plea bargain agreements during voir dire and opening statements. We disagree.

Generally, we review claims of prosecutorial misconduct de novo on a case-by-case basis in context to determine whether a defendant was denied a fair and impartial trial. *People v Abraham*, 256 Mich App 265, 272-273; 662 NW2d 836 (2003). However, because defendant did not contemporaneously object and request a curative instruction, this issue is unpreserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Therefore, we review for plain error affecting substantial rights. *People v McLaughlin*, 258 Mich App 635, 645; 672 NW2d 860 (2003).

"Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). "[A] prosecutor is given great latitude to argue the evidence and all inferences relating to his theory of the case." *People v Thomas*, 260 Mich App 450, 456; 678 NW2d 631 (2004) (citation omitted). However, the prosecutor cannot vouch for the credibility of prosecution witnesses to the extent that the prosecutor "has some special knowledge concerning a witness' truthfulness." *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995).

In *Bahoda*, our Supreme Court explained that a defendant is not entitled to reversal where the prosecution simply refers to a plea agreement that contained a promise of truthfulness. *Id*. The prosecution may refer to a plea agreement containing a promise of truthfulness as long as the agreement is not "used by the prosecution to suggest that the government had some special knowledge, not known to the jury, that the witness was testifying truthfully." *Id*. (quotation marks and citations omitted).

In this case, during voir dire and in the prosecution's opening statement, the prosecution stated that BB and BJ entered plea bargains in exchange for testifying truthfully. In so doing, the

prosecution did not bolster the witnesses' testimony, insinuate that their testimonies were truthful, or intimate that their testimonies should be given greater weight than any other witness. Accordingly, defendant was not denied a fair trial and he is not entitled to any relief.

## III. CONCLUSION

Finding no merit in any of the assignments of error of defendant, we affirm his convictions and sentence.

Affirmed.

/s/ James Robert Redford
/s/ Jane M. Beckering
/s/ Michael J. Kelly