*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THOMAS STEPHEN JOHNSTON,

        Defendant-Appellant.

UNPUBLISHED
March 06, 2026
1:33 PM

No. 375586
Marquette Circuit Court
LC No. 24-063342-AR

Before: MALDONADO, P.J., and M. J. KELLY and TREBILCOCK, JJ.

PER CURIAM.

Defendant, Thomas Johnston, was pulled over after an officer witnessed him driving erratically. The officer obtained a warrant to test defendant's blood, which revealed the presence of THC.[1] Defendant moved to suppress the evidence of drugs in his blood, arguing that the scope of the warrant was limited to testing for the presence of alcohol only. The trial court denied defendant's motion. We affirm.

## I. BACKGROUND

Marquette County Sheriff's Department Deputy Ryan Salo performed a traffic stop of defendant's vehicle when he observed defendant driving 71 miles per hour in a 55 mile per hour zone and crossing the fog line. Deputy Salo smelled marijuana coming from defendant's vehicle when he spoke with defendant. Upon questioning, defendant admitted that he had recently smoked marijuana before driving. Defendant agreed to submit to a preliminary breath test, which indicated a 0.00 BAC (blood alcohol concentration), but he refused to submit to a chemical test. Deputy Salo placed defendant under arrest for operating a vehicle while under the influence of drugs.

---

[1] "Tetrahydrocannabinol, or THC, is the physiologically active component of marijuana." *People v Koon*, 494 Mich 1, 3 n 3; 832 NW2d 724 (2013).

Deputy Salo then submitted a request for a search warrant to draw and test defendant's blood. The warrant and its supporting affidavit were drafted as a single document. The warrant was pro forma, with fill-in-the-blank components. The search warrant stated as follows:

On this 3rd day of September, 2022, affiant having subscribed and sworn an affidavit for a Court order, the affiant having been examined and probable cause to believe an OUID [operating under the influence of drugs] has occurred, and that a blood sample will produce evidence of intoxication:

Therefore, in the name of the People of the State of Michigan, I command that you seize [defendant] and procure blood samples to be tested for *alcohol content*.[2] [Emphasis added.]

The search warrant directly incorporated the affidavit into the warrant itself, as it reads "[t]he following having been sworn to by affiant in support of the issuance of this order." This text is immediately followed by Deputy Salo's affidavit that includes the fact that he was investigating defendant for an "OUID incident" and that he "personally observed [defendant] and believed same to be under the influence of alcohol or a controlled substance or both, or has an unlawful blood alcohol level . . . ." The affidavit subsequently recounted Deputy Salo's observations during the traffic stop, including the odor of marijuana and defendant's admission. The affidavit ended by stating "[t]hat said investigation will likely result in a criminal prosecution against said operator and a blood sample will constitute evidence of criminal conduct."

Deputy Salo oversaw defendant's blood draw, and two samples of defendant's blood were collected. Lab reports indicated that two separate blood tests were conducted. The first test, which was conducted on one sample of defendant's blood, returned a negative result for the presence of alcohol. A second test conducted on the other sample of defendant's blood indicated that it contained 78 ng/mL (nanograms per milliliter) of Delta-9 Carboxy THC and 16 ng/mL of Delta-9 THC. A confirmatory test showed slightly less THC in the blood.

Defendant was subsequently charged with two misdemeanor offenses: operating a motor vehicle while under the influence of an intoxicating substance (OWI), MCL 257.625(1), and, in the alternative, operating a motor vehicle while visibly impaired (OWVI), MCL 257.625(3), arising from the traffic stop.

Defendant moved in the district court to suppress the evidence gathered from the second blood test that confirmed the presence of THC in his blood, arguing that the plain language in the search warrant only authorized testing his blood for alcohol, not for controlled substances. However, defendant conceded that the affidavit indicated that Deputy Salo was investigating whether he had operated a motor vehicle under the influence of drugs *and* alcohol and "set forth probable cause for a warrant on THC."

---

[2] The underlined text indicates the preprinted spaces of the search warrant form where Deputy Salo filled in certain information.

The district court determined that suppression was not warranted because the warrant affidavit clearly indicated that Deputy Salo was investigating whether defendant was driving under the influence of drugs, and the reference to the test for alcohol was a "clerical mistake." Defendant appealed the district court's order in the circuit court.

The circuit court likewise determined that the search of defendant's blood for evidence of drugs was not outside the "purview of the search warrant" because Deputy Salo's warrant affidavit supported that he was "clearly looking" for evidence that defendant was under the influence of marijuana. Similar to the district court, the circuit court determined that the statement in the warrant "to include testing of defendant's blood for alcohol and not controlled substances was an oversight." Further, relying heavily on the analysis from *People v Woodard*, 321 Mich App 377; 909 NW2d 299 (2017), the circuit court found that the relevant search was the blood draw itself and that the subsequent testing for drugs was not a separate search. Therefore, the circuit court reasoned, none of defendant's Fourth Amendment interests were implicated by the subsequent testing of his blood for THC.

Defendant now appeals to this Court by leave granted.[3]

## II. ANALYSIS

On appeal, defendant does not dispute the validity of the search warrant or the result of the blood draw concerning his BAC. Rather, defendant takes issue with the particularity of the warrant. Specifically, he argues that the search warrant expressly authorized alcohol testing only and that the second test of his blood for controlled substances exceeded the scope of the warrant in violation of the particularity requirement of the Fourth Amendment. Therefore, according to defendant, the results of the test indicating the presence of THC in his blood must be suppressed. We disagree.

"A trial court's factual findings made when ruling on a motion to suppress are reviewed for clear error." *People v Tavernier*, 295 Mich App 582, 584; 815 NW2d 154 (2012). "A finding is clearly erroneous if, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake." *People v Swenor*, 336 Mich App 550, 563-564; 971 NW2d 33 (2021). This Court reviews de novo questions of constitutional law and a trial court's ultimate decision on a motion to suppress evidence. *People v Brcic*, 342 Mich App 271, 277; 994 NW2d 812 (2022).

The Fourth Amendment guarantees to the people the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." US Const, Am IV. Similarly, the Michigan Constitution of 1963 provides that "[t]he person, houses, papers, possessions, electronic data, and electronic communications of every person shall be secure from unreasonable searches and seizures." Const 1963, art 1, § 11. Absent a compelling reason,

---

[3] *People v Johnston*, unpublished order of the Court of Appeals, entered September 2, 2025 (Docket No. 375586).

Michigan courts must construe Const 1963, art 1, § 11 to provide the same protection as that secured by the Fourth Amendment. *Brcic*, 342 Mich App at 277.

Generally, officers must obtain a warrant for a search to be "reasonable." *People v Hughes*, 506 Mich 512, 525; 958 NW2d 98 (2020). "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and their persons or things to be seized." US Const, Am IV. "The purpose of the particularity requirement in the description of items to be seized is to provide reasonable guidance to the executing officers and to prevent their exercise of undirected discretion in determining what is subject to seizure." *Brcic*, 342 Mich App at 278 (quotation marks and citation omitted). The "particularity requirement defines the permissible scope of a search pursuant to a warrant, and any deviation from that scope is a warrantless search that is unreasonable absent an exception to the warrant requirement." *Hughes*, 506 Mich at 539. Specifically, "the state exceeds the scope of a warrant where a search is not reasonably directed at uncovering evidence related to the criminal activity identified in the warrant . . . ." *Id.* at 540. "Whether a search warrant satisfies the particularity requirement depends on the circumstances and the types of items involved." *Brcic*, 342 Mich App at 278.

In the present case, although the search warrant includes the pre-printed limitation to test for alcohol only, we conclude that when considering the circumstances of this case, the chemical testing of defendant's blood sample for evidence of THC did not exceed the scope of the warrant as it was written. The warrant stated that there was "probable cause to believe an <u>OUID</u> [operating under the influence of drugs] has occurred." The face of the search warrant thus established that it was reasonably directed at obtaining evidence relevant to the investigation of an OWI and OWVI involving marijuana. See *Hughes*, 506 Mich at 540.

Additionally, the warrant included the affidavit, given its proximity and incorporation into the warrant application itself. See *Brcic*, 342 Mich App at 279-280; *Groh v Ramirez*, 540 US 551, 557-558; 124 S Ct 1284; 157 L Ed 2d 1068 (2004). The affidavit indicated that defendant was under investigation for operating a vehicle while under the influence of controlled substances (i.e., marijuana) in violation of MCL 257.625(1) and (3). The scope of the warrant, therefore, encompassed a search for evidence of alcohol, controlled substances, or a combination of those substances. MCL 257.625(1)(a), (3). See also *Miller v Sanilac County*, 606 F3d 240, 250-251 (CA 6, 2010) (rejecting an argument that the language of a search warrant listing a charge of MCL 257.625(1) restricted blood testing to alcohol only because MCL 257.625(1) requires evidence that a driver was "intoxicated with alcohol, a controlled substance, or both."). Accordingly, the testing of the second blood sample for evidence of drugs did not exceed the scope of the warrant.

Even if we interpreted the warrant more stringently, such that it plainly limited the search to test only for alcohol, we nevertheless conclude that the good-faith exception to the exclusionary rule applies to save the fruits of the drug test in this case. The exclusionary rule is a prudential doctrine created by courts to compel respect for the constitutional guaranty against unreasonable searches and seizures. See *Davis v United States*, 564 US 229, 236; 131 S Ct 2419; 180 L Ed 2d 285 (2011). Its sole purpose is to deter police misconduct. *Id*. at 236-237. "For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." *Id*. at 237. When police officers exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the "deterrent value of exclusion is strong and tends to outweigh the resulting

costs." *Id*. at 238. However, when police officers act on a good faith belief that their conduct is lawful or when their conduct involves simple negligence, the "deterrence rationale loses much of its force, and exclusion cannot pay its way." *Id*. (quotation marks and citation omitted). In sum, evidence obtained through a defective search warrant is still admissible when the executing officer relied upon the validity of the warrant in objective good faith. *People v DeRousse*, 341 Mich App 447, 465; 991 NW2d 596 (2022).

In this case, as discussed, it is evident that Deputy Salo intended to obtain a search warrant authorizing a blood draw to test for THC in defendant's blood—not to test for alcohol. Unfortunately, the Sheriff's Department used a preprinted search warrant form that was preset to order a blood draw to test for alcohol. Although Deputy Salo presumably could have physically printed the request and then altered it by hand to fit the facts of his case, he did not do so. The district court characterized this as a "clerical mistake," and the circuit court agreed that it was an "oversight." And we agree.

"Courts have upheld warrants that contained typographical errors or clerical errors, such as in the description of the place to be searched, if the affidavit or information available to the police otherwise provided the correct information." *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 12. For example, in *Smith*, the Court determined that although the search warrant erroneously referred to the wrong crime, the error "had no impact on the determination of probable cause for issuance of the warrant or the scope of the search that was conducted pursuant to the warrant." *Id*. Here, defendant conceded that probable cause existed to support testing for drugs, and there is nothing in the record to indicate that Deputy Salo did anything but act in objective good faith by relying on the warrant to request both alcohol and drug testing of defendant's blood to further the criminal investigation.

Accordingly, we conclude that the equities here strongly favor concluding that Deputy Salo believed that he had filled out the correct form for lawfully obtaining authorization to get a blood sample from defendant in order to test it for THC.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Christopher M. Trebilcock

-5-